PIERCE AND OTHERS v. RANDOLPH AND OTHERS.

A note which is put up as a forfeit in case of failure to run a horse race, is valid and binding on the makers.

It is error to submit to the jury the question whether a contract is contrary to public policy ; that is a question of law, for the Court to decide.

Where it was agreed to run a horse race, and notes for $150 were put up as a forfeit, and afterwards it was agreed that the notes should be payable, in case of forfeiture, in property at a cash valuation, held that the second contract rescinded the first, and that a suit founded on the note could not be sustained, although there was a forfeiture, and failure to pay in property.

Error from Smith. This was an action on a note under seal, given as a forfeit in the event of a failure to run a horse race. It was dated the 26th June, 1851. This note was given in conformity with an agreement entered into on the same day, between John Randolph, one of the appellees, and James Moore, one of the appellants, to run a horse race at or near Canton, on the 23rd day of August, 1851, for a wager of three hundred dollars, payable in good mercantile property, and declaring that they had executed and delivered, as a forfeit, to the stake holder, their notes respectively for the sum of one hundred and fifty dollars, without expressing the condition that the said notes were payable in property. On the 8th day of August, the parties entered into another agreement, the stipulations of which were, in effect and so far as they varied from the original agreement, that the wager on the horse race was to be payable in cash, but the one hundred and fifty dollars, as a forfeit, to be payable in property, at a cash valuation. The defendants alleged that the first agreement was superseded and rescinded by the latter, and that the note sued on should have been surrendered for cancellation.

One year subsequently the original answer was amended, by an allegation that on the day fixed for the race, the defendants had tendered property for the payment of the one hundred and

Pierce v. Randolph.

fifty dollars, and that they had at all times been, and are now, ready and willing to pay off and discharge the said amount in good property. Six months subsequently the defendants, troubled in their consciences at the immoralities in which they had been participating, and at the necessity of discharging their obligations, pleaded that the note was given for an object illegal in its character, immoral in its tendency, and contrary to public policy in inducing intemperance and breaches of the peace.

This amendment, on exception, was sustained by the District Court.

The defendants had judgment; and the plaintiffs appealed and assign for errors:

1st. The overruling plaintiffs' exceptions to the said amended answer.

2nd. In refusing to entertain the motion to exclude said amended answer from the consideration of the jury, it not being sworn to.

3rd. The Court erred in its charge to the jury.

4th. In overruling the motion for a new trial.

*Bowdon & Chilton*, for plaintiffs in error. I. The defendants' amended answer, on which the case was in fact tried and decided, as the record shows, is bad, and the exception thereto should have been sustained. It is well settled by former adjudications of this Court, that either a forfeit note, or a wager on the result of a horse race, is recoverable, in the absence of fraud, &c. (McElroy v. Carmichael, 6 Tex. R. 454; Kirkland v. Randon, 8 Id., 10; Crump v. Secrest, 9 Id., 260.) The allegations in the plea, or amended answer, that horse racing tends to vice and immorality, breach of the peace, intemperance, &c., does not, as regards any legal effect, aid the plea; for the reason, that they are merely conclusions as to the tendency of horse racing, and which claim a legal effect in direct opposition to the conclusions of the Court, as shown by the cases above cited. Many things tend to immorality (con-

ventionally speaking) breach of the peace, &c., which, like horse racing, come not within the condemnation of the law.

II. The charge of the Court embraces the error of the plea, and placed it beyond the power of the jury (without disregarding it) to find for the plaintiff, "if they believed it (the note) "was merely a *forfeit note* on a horse race, and that horse "races are immoral in their tendency and tend to a breach of "the peace." In the absence of evidence, the Court instructs the jury to find against the plaintiff, if they believe that horse racing is immoral and tends to a breach of the peace. This was a legal question which the Court should have decided, and not have referred its solution to the jury, and made their notions of morality the basis of a legal conclusion. This is the point on which the case turned, and affords sufficient ground for reversal.

III. It cannot be successfully contended that the errors, apparent in the charges of the Court and in sustaining defendants' amended answer, resulted in no injury to the plaintiffs. The proof, instead of showing that the note sued on was suspended by the bond set out in the statement of facts, expressly excludes that idea. See the evidence of the plaintiff, sworn by his consent, at the instance of the defendants below. There is no reason for supposing that the verdict was based on this or any such ground.

When the Court has manifestly erred in forcing the plaintiff to go to trial on an insufficient plea, and misconceived the law in the instructions to the jury, the case should be reversed, unless it manifestly and certainly appears, that the party has not been injured and cannot recover on a subsequent trial. Nothing is clearer than the plaintiffs' right to recover, upon the evidence contained in the statement of facts, (which contains all of it,) taken in connection with the law as heretofore expounded by this Court, an exposition in unison with the whole current of Common Law rulings on this subject.

*W. B. Ochiltree,* for defendants in error. I. It is true that

this Court has on more occasions than one, intimated the opinion that the payment of such notes could be enforced in our Courts.    In McElroy v. Carmichael, 6 Tex. R. 454, the Court says that wagers are illegal only when forbidden by statute or when they militate against morality, public policy, or form inducements to breaches of the peace.    There is no error in the charge as given ; for it is expressly charged by the Court, that unless the jury believe that the running of a horse race be immoral in its tendencies and lead to breaches of the peace, they shall find for the plaintiff.    (See Bouvier, Law Dictionary, Wager.)    This Court referred to the decisions of the English Courts to sustain the position taken, that wagers upon a horse race can be enforced in the Courts.    In England, horse racing is a national pastime.    It is carried on in a style entirely different from what it is here.    There the race course is kept under a rigid system of police.    Rules and regulations are prescribed for its frequenters, which render it an agreeable resort.    The annual meeting of the Derby is looked for by every class, from the palace to the hut of the chimney sweeper.    Its suppression would almost lead to revolution, and it is upon wagers made and run upon those incorporated courses, that decisions referred to are based.    I imagine that the learned Judges over the Atlantic have but little conception of a quarter race track in America.    In the expressive language of Parson Brownlow, the quarter race track is the shortest road to perdition that has yet been discovered, invariably resorted to by the idle and dissolute ; its general concomitant an ox cart and a barrel of whiskey, out of the bung hole of which flows one continuous stream of drunkenness, and profanity of the most disgusting character.    Will the Courts, even in the absence of legislative prohibition, enforce a contract based upon a consideration so directly and positively hostile to the best interests of society, immoral in its tendencies, and detrimental to the public.    (Bouvier, Ib.)    The argument that it is calculated to improve the breed of horses is only applicable to the regular turf races such as the Derby, that I

have referred to. Diogenes himself would smile at the idea of such being the result, could he'but see the competitors in speed upon one of our quarter race tracks, groomed by Simon Suggs and rode by ——.

The production of an Eclipse, a Boston, or a Lecomte, are of incalculable benefit, it is true, to the country at large. But the production of Button, Snooks, *et id omne genus*, serves but one purpose, and that is to develop mirth inspiring talents of Longstreet and of Hooper.

II. But I have no idea that the jury founded their verdict upon the immorality of the consideration for which the note was given ; there is another point which will fully sustain the verdict. It is alleged in his answer by the defendant, that the note sued was agreed to be cancelled, and a subsequent and substitute agreement was adopted between Randolph and Moore, the principals to the transaction. It is true, that the plaintiff Pierce who was permitted to testify, did not so understand the second agreement, but the agreement was offered in evidence to sustain the defendants' answer. Which it most certainly does. It will be seen to refer to the same race upon which the note sued on was executed to be staked as a forfeit ; is of later date, and provides for the payment of property in lieu of cash. Upon this evidence the jury found their verdict. It has been decided by a jury of the country, and will, I hope, be suffered to remain undisturbed.

HEMPHILL, CH. J. The first error is as to sustaining the plea that the note was given for an illegal object, and one which was immoral in its tendency and contrary to public policy, and in connection with this, we will consider the first branch of the charge of the Court, to the effect, that if the jury believe that the note was given as a forfeit on the running of a horse race, and that such races are immoral in their tendency and tend to breaches of the peace, then the note is based on an illegal consideration, and the plaintiffs are not entitled to recover.

It requires no discussion to show that the plea is bad, and that the charge of the Court is in direct contravention of the law as it has always been held in Texas, and as it has been repeatedly decided and declared by this Court. If anything can be settled by law and judicial decision, then is the right to recover for wagers and forfeits on horse races a settled question. (1 Tex. 89; 6 Tex. 454; 8 Tex. 10; 9 Tex. 260.) But it seems a new rule has been discovered, by which to test the validity of contracts, and that is, the belief of the jury with regard to their tendency to immorality and breaches of the peace, and this even where such contracts have been declared by the Court of the last resort to be valid in law, and to have all the force and efficacy which the law can impart to any contract. No doctrine more subversive of law and of private and public rights could have been devised.

In fact it sets them afloat upon public sentiment, to fluctuate and rise and fall with the ebbs and flows of popular opinion, and when brought to trial, to succeed or fail, not according to established rules of law, but upon the belief, the private opinions, or in other words the whims and caprices of the jury before whom they are presented. The most sacred rights, those most cherished by the law, may be frustrated and defeated, if without any regard to the law, a Justice of the Peace with his jury, might deem them against morals, good order or public policy. Under this doctrine, not only would contracts for the sale of spirituous liquors, for public barbacues, or secular exhibitions of any kind, which would attract masses of people together, most likely be deemed nullities, but the regular physician might fail to recover for his rights and his services if his rights were submitted to a jury of hydropathists, who might believe them to be dangerous to the health and life of the patient. The rights to lands, however clear, under patents and deeds, might suddenly be lost under the operation of agrarian principles by which the jury or some of them might be infected, and who, in their conscience, might believe that one hundred and sixty or three hundred and twenty acres were

the extreme limit which should be allowed to any single individual, and to suffer more to be recovered or enjoyed would be destructive of the equal rights of others and at war with sound public policy.

But it is useless to multiply instances of the danger of such a doctrine. They will readily suggest themselves to any reflecting mind.

It is the duty of both Judges and juries to decide on rights according to the laws of the land, and not on their belief of what ought to be law. Their office is not legislative; it is judicial; it is to administer the law as they find it, and not to exalt their own belief or notions above the law, and follow these as a higher code by which the rights of the community are to be regulated or controlled.

But, notwithstanding the errors in overruling the exception and in the charge of the Court, yet as the action was brought on the note, instead of the second contract, the judgment must be sustained. There is an important difference between the two contracts. In the first, the forfeit is payable in cash, and the wager on the race in property. On the latter, the order is reversed, the forfeit being payable in property, and the wager in cash.

It was manifestly the intention of parties, that the first should be superseded by the second contract. This inference is deducible from the contracts themselves. Consequently, the note should have been surrendered and the action brought on the second and not on the first contract.

Judgment affirmed.