[Civ. No. 1006.    First Appellate District.—July 12, 1912.]

## FERNANDO SPANGENBERG, Appellant, v. RUDOLPH SPANGENBERG, Respondent.

WILLS—CONTRACT BY HEIRS APPARENT TO POOL AND EQUALLY DIVIDE BEQUESTS DISTRIBUTED—REFUSAL OF EXECUTOR AS RESIDUARY LEGATEE TO DISTRIBUTE—CONSTRUCTION OF CONTRACT.—A contract between six out of seven heirs apparent during the lifetime of their father, reciting a consideration of love and affection, was to the effect that if he should devise or bequeath to any of said parties more or less than one-seventh of the total amount of his property, whatever they received from his estate upon partial or final distribution should be pooled, and divided equally among such parties, share and share alike. Under the father's will the plaintiff had received upon partial distribution of his estate only one-twentieth

part thereof, whilst the executor, who was a residuary legatee of over one-fourth of the estate, has refused for considerably over one year to distribute the same, purposely to evade responsibility to plaintiff and other heirs similarly situated. Held, that though the contract is susceptible of the narrow construction that its enforcement depends upon a distribution, yet it will not be so construed, as against the plaintiff, under the facts of the case.

Id.—EFFECT OF FAILURE TO PROCURE DISTRIBUTION—IMPLICATIONS—PERFORMANCE DUE DEEMED DONE.—While distribution of the estate is obviously intended as a necessary incident to the performance of such contract, if made in good faith, yet it impliedly contemplates that final distribution should be made within a reasonable time, and without any unnecessary delay, and it should be interpreted so as to require such executor, who is residuary legatee, to apply for and procure distribution to himself whenever the estate was in a condition to be closed; and his voluntary failure to do so cannot avail him in attempted avoidance of his contract, since under the rule embodied in section 3529 of the Civil Code, "that which ought to be done is to be regarded as done, in favor of him to whom and against him from whom, performance is due."

Id.—DELIBERATE REFUSAL TO PERFORM CONTRACT—BREACH OF CONTRACT.—Where the complaint alleges that, notwithstanding there was no obstacle in the way of closing up the estate, defendant purposely refrained from applying for distribution of the residue of the estate to himself, in order that he might evade the obligation of his contract with the plaintiff, thus deliberately refusing to do that which he had agreed and was required to do, it shows a breach of contract which gave to plaintiff a right of action to recover the sum stipulated and due thereunder.

Id.—REMEDY NOT IN PROBATE COURT—ACTION ON CONTRACT.—The plaintiff had no standing under which he could have exercised any remedy in the probate court, he having received the small legacy to which he was alone entitled in that court. He is not a legal assignee of the rights of the defendant, which could be enforced in that court; but the sole remedy is to enforce the contract, by an action thereon for his stipulated share of what is due to defendant in the probate court in excess of the sum awarded to plaintiff therein.

Id.—CONTRACT NOT AGAINST PUBLIC POLICY.—It is held that there is nothing in the contract between the heirs to share equally in the estate that is against any known statute or contrary to public policy; and that such contract is to be essentially distinguished from an invalid contract by an heir apparent to give a stranger to the family an interest in the estate, but the agreement of the heirs between themselves is valid and enforceable in this state.

Id.—VIOLATION OF PUBLIC POLICY A QUESTION OF LAW.—The question whether or not a contract in any given case is contrary to public

policy is a question of law to be determined from the circumstances of each particular case.

ID.—COMPLAINT NOT DEFECTIVE FOR NONJOINDER OF OTHER HEIRS—CONTRACT SHARE OF EACH HEIR SEVERAL.—The complaint is not defective for nonjoinder of other parties who would be entitled as against the defendant severally to recover the share due to each. Neither of the heirs has any joint interest in the share due to one of them, and each right of recovery is several. The rule is that where several distinct sums are by contract payable to several distinct persons any one of the parties may sue severally for his share, without joining the other parties either as plaintiffs or defendants.

ID.—DEMURRER TO COMPLAINT IMPROPERLY SUSTAINED.—It is held that the complaint of the plaintiff is free from defects and states a cause of action in favor of the plaintiff, and that the defendant's demurrer thereto was improperly sustained, and the judgment rendered against the plaintiff upon such demurrer must be reversed.

APPEAL from a judgment of the Superior Court of Alameda County.   Wm. H. Waste, Judge.

The facts are stated in the opinion of the court.

F. J. Castelhun, for Appellant.

McKee & Tasheira, for Respondent.

LENNON, P. J.—The plaintiff in this action seeks to recover the sum of $3,907.61, alleged to be due to him from the defendant by the terms of a contract whereby the plaintiff, the defendant and four other children of one Ferdinand Spangenberg, agreed, during the lifetime of their father, that if he "should die possessed of any property and give, devise or bequeath to any of said parties more or less than one-seventh (1/7) of the total amount of the property given, devised or bequeathed to all of said parties, then whatever property said parties or any of them received from said estate upon a partial or final distribution thereof, shall be pooled and divided equally among said parties share and share alike."

The consideration for the contract was expressly stated to be the love and affection which the parties thereto bore toward one another, and their desire to avoid litigation over the estate of their father.

Ferdinand Spangenberg died in the city of New York on the second day of May, 1903, leaving a will bearing date the second day of May, 1902, wherein the defendant, Rudolph Spangenberg, of the city of Oakland, California, was nominated executor. On July 9, 1903, the surrogate court of the county of New York, in the state of New York, made an order admitting said will to probate, and appointing the defendant as executor thereof. The defendant qualified as such executor. Letters testamentary were issued to him, and he still is the qualified and acting executor of said will.

At the time of his death the testator left surviving him seven children, all of whom but one, Lavinia Spangenberg, were parties to the contract in controversy. In addition to several minor bequests to persons other than his children, the testator bequeathed to each of the six children who were parties to the contract, and all residents of the state of California, the sum of $4,000. The further sum of $4,000 was bequeathed to the defendant, Rudolph Spangenberg, and his sister, Isabella Paull, in trust, however, for Lavinia Spangenberg. All the rest, residue and remainder of the testator's estate was bequeathed in equal shares to two of the parties to the contract, viz.: Rudolph Spangenberg, the defendant, and Isabella Paull, a daughter of the deceased.

The total value of the estate of which the deceased died possessed and which came into the hands of the executor amounted to $80,951.21, and, after deducting the costs and expenses of administration, there was paid, on partial distribution of said estate, to each of the six children who had entered into the contract in suit, the several sums of money specifically bequeathed to them. Upon partial distribution, there was also paid to the defendant, Rudolph Spangenberg, and his sister, Isabella Paull, the sum of $4,000 specifically bequeathed in trust for Lavinia Spangenberg. The defendant, as executor, has paid to said Isabella Paull her share of the residue of said estate, amounting to the sum of $23,-445.66, which leaves in the hands of the defendant, as executor, the sum of $23,455.66, which will be paid over to him upon final distribution as his share of the residue of the estate.

For more than one year prior to the commencement of the present action the said estate has been ready for final dis-

tribution and in a condition to be closed, but for the purpose of evading the payment to the plaintiff of the amount alleged to be due to him under the contract, the defendant has neglected and refuses to have final distribution of the residue of said estate made to himself.

Plaintiff has, at different times, demanded of the defendant payment of the one-sixth of the residue of said estate to which it is alleged plaintiff is entitled under the contract, but the defendant refuses to pay the same to the plaintiff.

The foregoing is a substantial narrative of the facts alleged in the plaintiff's complaint and constitutes his cause of action.

The defendant interposed a demurrer to the plaintiff's complaint upon all of the statutory grounds. The demurrer was sustained with leave to the plaintiff to amend, but the plaintiff declined to amend, and accordingly judgment was rendered against him, from which he has appealed.

In support of the judgment the defendant, among other things, contends that the complaint does not state facts sufficient to constitute a cause of action in this that no breach of the contract sued on is shown. In this behalf the argument is made that the contract expressly requires, as a condition precedent to its performance, partial or final distribution of the estate of Ferdinand Spangenberg, and that until the happening of said condition no right of action on the contract exists in the plaintiff. In short, the defendant takes the stand that his agreement with the plaintiff and the other parties to the contract was merely to pool his share of the estate only when he received it, either by partial or final distribution, and that inasmuch as he did not expressly agree to procure distribution of the estate, he is under no obligation to do so within any particular time or at all, and that until final distribution is had to him, he will have nothing to share with the plaintiff.

The contract in question may be susceptible of the narrow construction here contended for by the defendant, but it will not be so construed.

The complaint alleges, and for the purpose of the demurrer it must be taken as true, that the estate might have been closed and final distribution ordered in accordance with the terms of the will at the expiration of one year from the date of issuance of letters testamentary, and to construe the contract

as the defendant would have it would leave the plaintiff without a remedy and at the mercy of the defendant for an indefinite period of time, and, perchance, would enable the defendant to altogether evade the obligation of his contract.

For instance, if the defendant should assign his interest in the estate and procure distribution to be made to his assignee, the plaintiff, under the construction of the contract here contended for, could not maintain his action on the contract because distribution had not been made personally to the defendant.

All things which in law or usage are considered as incidental to a contract or necessary to carry it into effect or to make it reasonable "are implied therefrom unless some of them are expressly mentioned therein," in which event "all things of the same class are deemed to be excluded." (Civ. Code, secs. 1655, 1656.)

Distribution of the estate of Ferdinand Spangenberg obviously was a necessary incident to a performance of the contract in controversy, and although not specially mentioned therein, the contract impliedly contemplated that final distribution would be made within a reasonable time and without any unnecessary delay by the person who might be nominated and appointed executor of the will. The contract, therefore, should be interpreted so as to require the defendant, who was both a residuary legatee and executor under the will, to apply for and procure distribution to him of his share of the estate whenever the estate was in a condition to be closed, and his voluntary failure to do so cannot avail him in an attempted avoidance of his contract because "that which ought to be done is to be regarded as done, in favor of him to whom . . . and for whom, performance is due." (Civ. Code, sec. 3529.)

If it be conceded, as the defendant contends, that distribution was a condition precedent to the performance of the contract, then it must follow that if distribution had been made to the defendant, the plaintiff then would have had a cause of action for a subsequent refusal to perform the contract. The complaint alleges that notwithstanding there was no obstacle in the way of closing the estate of Ferdinand Spangenberg, defendant purposely refrained from applying for distribution of the residue to him in order that he might

evade the obligation of his contract with the plaintiff. In other words, the defendant deliberately refused to do that which, in legal effect, he had agreed and was required to do. This we think was tantamount to a breach of the contract, and gave the plaintiff a right of action for the sum stipulated and due thereunder. (*Wolf* v. *Marsh*, 54 Cal. 228; *Love* v. *Mabury et al.*, 59 Cal. 484; *Poirier* v. *Gravel*, 88 Cal. 79, [25 Pac. 962]; *Crane* v. *McCormick*, 92 Cal. 176, [28 Pac. 222]; *Bagley* v. *Cohen*, 121 Cal. 604, [53 Pac. 1117]; *Moffit* v. *Rosencrans*, 136 Cal. 416, [69 Pac. 87].)

It is next claimed upon behalf of the defendant that the plaintiff, assuming that he has any existing rights under the contract, has not only mistaken his remedy, but the forum as well in which the wrong complained of can be righted. It is asserted that the plaintiff's remedy, if any he has, must be sought and applied in the surrogate court of the state of New York, where the estate of Ferdinand Spangenberg is pending in probate. It is conceded that inasmuch as the plaintiff has, upon partial distribution, received the specific legacy bequeathed to him by the will, he has no longer any standing in that court as an heir, legatee or devisee under the will sufficient to enable him to coerce the defendant into closing and distributing the estate. It is insisted, however, that the parties to the contract in controversy stand in the relation of ''mutual assignees of each other'' with respect to their several inherited interests in the estate of their father, and from this it is argued that the plaintiff, equally with the defendant, is. in a position to compel distribution to himself, in the surrogate court of the state of New York, of such portion of the defendant's share in the estate as the contract calls. for, and that it is incumbent upon the plaintiff to exhaust his remedy in the New York court before he will be heard to complain, in this action, of the defendant's neglect to close and distribute the estate.

In our opinion the contract in question cannot be said to be strictly an assignment or conveyance of the legal title of the defendant in. and to. any portion of his inherited interest in the estate of his deceased father.

The contract does not purport, either directly or by implication, to assign any portion of the estate to the parties thereto. It is nothing more nor less than an agreement by

heirs apparent to ignore the will of their ancestor, but even assuming it to be in the nature of an assignment of an expectant interest, it was as such and at best but "an attempted conveyance by one who then had no transferable interest in the property here involved, and the determination of questions relating thereto is not within the scope of probate proceedings and is not authorized by statute." (*Estate of Ryder*, 141 Cal. 366–371, [74 Pac. 993].)

Assuming the contract to be nothing more nor less than a conveyance of the expectant interest of an heir apparent, the probate court in California, if the estate in question had been settled here, would not have had jurisdiction to determine the interest of plaintiff (if any) in the defendant's share of the estate. While our probate court has jurisdiction to consider and determine the right to distribution of a person claiming as an assignee of an heir, devisee or legatee under a conveyance made subsequent to the death of the decedent, it has no jurisdiction to adjudicate the claim to distribution of the assignee or grantee of an heir apparent under a conveyance made prior to the death of the deceased. (*Estate of Ryder*, 141 Cal. 366, [74 Pac. 993].)

If it be true, as counsel concede, that the law of the state of New York is substantially the same as the law of the state of California upon the subject of assignments or conveyances by an heir apparent of an expectant interest in the estate of an ancestor, it must follow that the plaintiff would not be required, nor would he be permitted, to litigate his claim in the surrogate court in the state of New York, and in no event could he participate in the distribution of the defendant's share of the estate without the latter's consent. This being so, it is obvious that the only remedy available to the plaintiff is his present action on the contract.

The contention that the complaint does not state a cause of action because the contract sued on is against public policy, and therefore void, is made here for the first time. It is to the interest of the public generally that the right to make contracts should not be unduly restricted, and no agreement will be pronounced void as being against public policy unless it clearly contravenes that which has been declared by statutory enactment or by judicial decisions to be public policy, or unless the agreement manifestly tends in some way

to injure the public. Whether or not a contract in any given case is contrary to public policy is a question of law to be determined from the circumstances of each particular case. (*Smith* v. *DuBose,* 78 Ga. 413, [6 Am. St. Rep. 260, 3 S. E. 309–316] ; *Weber* v. *Shay,* 56 Ohio St. 116, [60 Am. St. Rep. 743, 37 L. R. A. 230, 46 N. E. 377] ; *Pierce* v. *Randolph,* 12 Tex. 290; *Printing Numerical Registering Co.* v. *Sampson,* 19 L. R. Eq. Cas. 465.)

The contract in controversy is in effect but an agreement whereby the parties thereto, "because of their love and affection for one another," and being "desirous of avoiding litigation over the estate" of their father "in case of his death," agreed to ignore his will in the event that he made one, and then share his estate equally as if he had died intestate. In other words, the contract was but an agreement of heirs apparent not to contest the will of an ancestor. There is nothing to be found in our code or statutory law prohibiting the making and enforcement of such a contract, and it has been held in this state that a contract, made after the death of the deceased, not to contest his will is purely personal to the parties making it; that it is not against public policy, and that, when fairly made, it will be enforced. (*Estate of Garcelon,* 104 Cal. 570, [43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414].)

The case of *Stringfellow* v. *Early,* 15 Tex. Civ. App. 597, [40 S. W. 871], involved the enforcement of a contract between heirs whereby it was agreed that the will of an ancestor should not be probated, and that his estate should be divided among the parties to the contract in such proportions as they would be entitled to as heirs at law if the testator had died intestate. It was held in that case that such an agreement was not contrary to public policy, and that "such adjustments by contract are favored by the law . . . and are not to be deemed an unwarranted interference with the jurisdiction of the courts."

In the case of *Phillips* v. *Phillips,* 8 Watts (Pa.), 197, it was said: "It cannot admit of doubt that before probate the parties in interest under a will would have the right to set aside a will, and such an act would be favored when the object was to avert a family controversy." Clearly, if the contract in controversy had been made and executed subsequent to

the death of Ferdinand Spangenberg, it could not have been successfully assailed and set aside because it was violative of any law or principle of public policy, and we can see no difference in its effect upon the policy of the public, between a contract to refrain from contesting a will made during the lifetime of a testator and such a contract made after his death. The identical question involved upon this phase of the present case was decided adversely to defendant's contention here in the two cases of *Beckley* v. *Newland* and *Wethered* v. *Wethered,* respectively reported in 24 Eng. Reprint, 691 (2 P. Wms. 182), and 57 Eng. Reprint, 757 (2 Sim. 183).

In all of their essential features of law and fact, these two cases are exact counterparts of the case at bar, and in each instance it was held that an agreement stipulating that whatever the sons in one case and the heirs presumptive in the other might receive by will should be equally divided between them, was valid, enforceable and not contrary to public policy. In those cases, as here, it was objected in substance that a contract by heirs, devisees or legatees made during the lifetime of the testator to divide his estate, to which, at the time of the making of the contract, the parties had no manner of right, and possibly might never have, was a fraud upon the testator, who, in all probability, would not have bequeathed anything to any of the parties to the agreement if he could have foreseen that his will would have been frustrated, by the act of the parties, immediately upon his death.

It was ruled, however, in the case of *Beckley* v. *Newland,* and subsequently reaffirmed in the case of *Wethered* v. *Wethered,* that "the agreement to share equally would not be disappointing the intent of the testator, for he did not design to put it out of either of the devisees' power to dispose of the estate after it should come to him, but, on the contrary, when the testator gave it to either of them, he, by implication, gave that person a power to dispose of the estate when it should come to him."

It was further held in those cases in effect that inasmuch as the tendency of agreements similar to the one in question here was to guard against undue influence over the testator, and as it could not be said to be unreasonable to covenant to do what the law would have done if the testator had died

intestate, the notion that they were contrary to the policy of the law was not supported by the principles of law applicable to such cases, and that performance of such contracts should be decreed, even though there was no other consideration for their execution than the reciprocal benefit which might accrue to the parties.

We are not unmindful of the many cases in this country and in England, cited to us by counsel for the defendant, declaring the invalidity of secret contracts made with strangers to the family of the testator, by his heirs, during his lifetime and without his knowledge and consent, purporting to convey an expectant interest in his estate. In all of the cases cited such contracts were declared void primarily for fraud upon the testator, and, secondarily, as being contrary to public policy, unless it was pleaded and proven that they were made and executed with the knowledge and consent of the testator. The reasoning of those cases proceeded upon the theory that such conveyances, if permitted, would perpetrate a fraud upon the testator by diverting his bounty from his heirs to strangers, and such conveyances were declared to be contrary to public policy because of their tendency to encourage extravagance, prodigality and vice in the heirs, and, in some instances, a desire in an avaricious or vicious purchaser for the death of the testator.

The reasoning and the rule of those decisions do not apply, however, to contracts exclusively between heirs, legatees or devisees, which have, as has the contract in the case at bar, the declared object of avoiding litigation and the implied purpose of suppressing fraud and undue influence. Where, as here, there was a fair though a secret agreement among all of the heirs of the testator to share his estate equally, the situation and the resulting rule of law are very different from that which obtains in contracts between an heir apparent and a stranger to the estate, for the reason that the agreement between the heirs would have the commendable "tendency to suppress all attempts of one or more to overreach the others, as well as to prevent all exertions of undue influence. . . . And it cannot be truly said to disappoint the testator's intention" nor contravene public policy. (1 Story's Equity Jurisprudence, secs. 265, 343; *Beckley* v. *Newland,*

2 P. Wms. 182, [24 Eng. Reprint, 691]; *Wethered* **v.** *Wethered,* 2 Sim. 183, [57 Eng. Reprint, 757].)

It must be conceded that some of the cases cited to us by the defendant do involve and void contracts similar to the one in the case at bar which were made between heirs during the lifetime of the testator and without his consent. It cannot be disputed that those cases expressly decide and declare that a complaint which does not directly or impliedly plead the consent of the testator to such a contract does not state facts sufficient to constitute a cause of action. Those cases, however, are the exception rather than the rule, and they fail to satisfy us that any principle of public policy, statutory or otherwise, in this state at least, would be violated by the enforcement of the contract under consideration here.

Finally, the defendant insists that the complaint is defective because of the nonjoinder, as plaintiffs or defendants, of all of the other parties to the contract. This contention cannot be sustained. "An obligation imposed upon several persons, or a right created in favor of several persons, may be joint, several or joint and several," and generally such obligation or right is presumed to be joint, rather than several, save and except in cases "where the parties who unite in a promise receive some benefit from the consideration, whether past or present," and in such cases "their promise is presumed to be joint and several." (Civ. Code, secs. 1430, 1431, 1659.)

Where several distinct sums are by contract payable to several distinct persons, any one of the parties may sue separately for his share; and where several persons obligate themselves to pay several sums of money, their obligation is several and not joint, notwithstanding that the sum agreed to be paid by each goes to make up an aggregate sum. (*Moss* v. *Wilson,* 40 Cal. 159; *Craig* v. *Fry,* 68 Cal. 363, [9 Pac. 550].)

In the present case all of the parties to the contract presumably derived some benefit from the consideration for its execution, and as the plaintiff's cosigners of the contract, other than the defendant, could not possibly have any interest in the sum sought to be received from the defendant, his obligation under the contract must be deemed to be several, and a several action may be maintained thereon without

joining, either as plaintiffs or defendants, the other parties to the contract.

Upon the whole case we are of the opinion that plaintiff's complaint is free from defect and states a cause of action, and that the defendant's demurrer thereto was improperly sustained. It is ordered, therefore, that the judgment appealed from be and it is hereby reversed and the cause remanded to the lower court, with instructions to overrule the demurrer and require the defendant to answer.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 10, 1912.