*Decision will be entered under Rule 50.*

UHL ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89239.   Promulgated December 21, 1939.

*Paul A. McCarthy, Esq.*, and *Benjamin Hicklin, C. P. A.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

1226

1227

OPINION.

HARRON: The first question is whether assessment of a deficiency in income and excess profits tax is barred by the statute of limitations.  Determination of this question turns on either (a) whether the return filed by petitioner was such return as meets the requirements of section 52 (a) of the Revenue Act of 1932; or (b) whether a valid waiver was filed, pursuant to section 276 (b) of the Revenue Act of 1932, by petitioner, so as to extend the period for assessment to June 30, 1937.

(a) Petitioner stands upon the income and excess profits tax returns as filed, and contends that the filing of the income tax return started the running of the statute of limitations.  Respondent, by amended answer, alleges that the return filed was not a proper return,

as required by law, because it does not meet the requirements of section 52 (a), since it was not sworn to by the president of petitioner, and it was not subscribed and sworn to by the treasurer of petitioner. Respondent contends that, no proper return having been filed, the statute of limitations has not yet started to run. Respondent relies on *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245, 248, 249, and *Employees Industrial Loan Association, Inc.*, 27 B. T. A. 945, 950.

The evidence shows that the returns of petitioner for 1933 were not sworn to by its president. He has testified that he signed the returns in Los Angeles, the returns having been mailed there to him to sign, and that he did not sign the returns before a notary. The evidence shows that Adolph Uhl signed the returns in San Francisco. On each return there appears the signature and seal of Ruth H. Cosgrove, notary public in and for the City and County of San Francisco. The president of petitioner, George Uhl, did not swear to the returns of petitioner before Ruth H. Cosgrove. Her seal and signature on the affidavits mean nothing whatever with respect to the signatures of petitioner's president.

The record shows that petitioner had only one officer in March 1934, when the returns were filed, namely, a president. George Uhl testified (page 12 of the transcript) that there was no treasurer. It is not necessary to determine whether a return signed and sworn to by one officer of a corporation, who is the only officer, is a return which meets the requirements of section 52 (a).

Under the provisions of section 52 (a) it is mandatory that a return of a corporation "shall be sworn to by the president." This requirement is not a matter of mere form, but is to fix responsibility. *Indiana Rolling Mills Co.*, 13 B. T. A. 1141, 1144. The returns of petitioner do not meet the express requirement of the statute that the information thereon be furnished under oath. It is held that no proper returns for the year 1933 were filed for petitioner. A taxpayer must meet all the named conditions of the statute with meticulous compliance, in order to secure the benefit of the statute of limitations. *Lucas* v. *Pilliod Lumber Co.*, *supra*. Since the petitioner did not file returns which meet the statutory requirements, there is no bar to the assessments of tax which respondent has made. It is the filing of returns that starts the running of the statutory period. See section 275 (a) of the Revenue Act of 1932; *Updike* v. *United States*, 8 Fed. (2d) 913.

(b) In view of the above holding, it is not necessary for us to consider whether or not the waiver executed by Adolph Uhl was a valid waiver.

The second question relates to the respondent's claim for addition to the tax of the 25 percent penalty under section 291 of the Revenue

Act of 1932. The reasons which require that it be held that no proper return was filed for 1933, for failure to meet the statutory requirements, require also that the addition to tax be sustained. The imposition of the penalty is mandatory. *National Contracting Co.,* 37 B. T. A. 689; affd., 105 Fed. (2d) 488.

The third question is whether petitioner is entitled to a deduction in the amount of $80,514.43 as a bad debt ascertained to be worthless and charged off, or as a loss. Petitioner deducted on its return, as a loss, $103,169.52, the amount of the joint debt of Adolph Uhl and George Uhl for which petitioner gave a discharge of liability to Adolph Uhl in November 1933. Since petitioner owed $22,655.09 to Adolph Uhl, it now claims to be entitled to a deduction for only the net amount of $80,514.43.

The respondent disallowed the deduction claimed upon the ground that no information had been submitted "to show any attempts to collect on this joint account or show how the joint account became a separable one on which the company could sustain a loss on joint debtors without an attempt to collect from both."

In its petition, petitioner states the following:

In November 1933 petitioner had a valid claim against Adolph Uhl based upon his joint indebtedness with George Uhl. At that time Adolph Uhl was in financial difficulties and was unable to pay his proportionate one-half of said joint obligation of $226,339.03.

The petition has not been amended with respect to the above pleading.

On brief, petitioner advances an argument that the indebtedness of Adolph Uhl and George Uhl was separate and several, because of what was done in 1919 when the Uhl brothers agreed to separate their interests in the petitioner. The facts show that the 1919 transaction represents nothing material, and no more than that in that year Adolph Uhl conveyed all his stock in petitioner to George Uhl in exchange for the St. Paul building. It is impossible to read into the 1919 transaction any oral agreement that could have any bearing whatever on the nature of the obligation of the Uhl brothers under the loan account set up on petitioner's books in 1923. There is no evidence that in 1919 the Uhl brothers agreed that, if in the future any sums of money should be advanced to them by petitioner, they would be severally liable for repayment of one-half thereof. The theory is without merit and no consideration can be given to it.

Apart from the above theory, petitioner contends that the debt of George and Adolph Uhl, totaling $226,339.03, was a several obligation from its inception in 1923 by agreement between the parties. There is no evidence to support the contention, other than testimony of Adolph Uhl as to his attitude with respect to his own obligation,

and that which is stated in the preamble to the resolution adopted on November 6, 1933. Adolph Uhl's testimony, at page 147 of the transcript, is that he never looked upon the entire amount of the account as his obligation; that it was always understood that "each one" was responsible for his part of the obligation. Little weight attaches to this testimony standing alone, as it does. The statement in the preamble to the resolution adopted in 1933 is ambiguous. It states, first, that "Adolph Uhl and George Uhl are indebted to this corporation in the principal sum of $226,339.03." Thereafter, it states that one-half of the amount is owed by Adolph Uhl. Both Adolph Uhl's testimony and the foregoing statements from the resolution are not incompatible with the existence of a joint obligation because even where a joint obligation exists, each obligor is usually deemed to be liable for contribution to the other obligor if he is called upon to pay more than his share of the joint debt. If the wording of the resolution be taken to mean that the share of each obligor was one-half of the total debt, that alone is not a statement sufficient to show that originally it was understood that the obligation was several. The first words of the resolution would indicate that the debt was joint. Nowhere is there to be found in the record any evidence of a *distinct* understanding, *ab initio*, that the debt was several. There are no distinct words or terms of severance used to produce a several responsibility or right.

Adolph Uhl has not shown by his testimony or other evidence whether any of the sum charged against the "A" and "G" Uhl account, from 1923 through 1933, were paid to him for his use. Although George Uhl testified in this case, he gave no testimony about the account, or about the understanding of the parties as to the liability of each or both debtors. The cash advances were charged to one account, that of George and Adolph Uhl, and it appears from some of the notations on the account that the advances were applied to the purchase of real estate, title to which was held by corporations in which both brothers owned all the stock. There is no evidence to show who made repayments to petitioner of the various amounts credited to the account in 1925, 1926, and 1929. It is likely that the sums were advanced to the Uhl brothers to use in joint ventures. As for Adolph Uhl's testimony about his attitude toward his obligation, it is not incompatible with the attitude of a joint obligor, for a joint obligor may feel himself bound, in the first instance, to pay only his share of a joint debt, and may expect his coobligor to pay his respective share. Such attitude, on the part of one obligor, has nothing to do, however, with the legal liability of the coobligor to pay the full amount of the joint debt.

Whether or not a debt is joint or several is governed by the intent of the parties. *American Jurisprudence*, vol. 12, par. 268. In the

absence of clear evidence as to the intent of the parties, an obligation of two or more persons is presumed to be a joint obligation rather than several. See section 1431 of the Civil Code of California. Since there is no clear evidence of a several obligation to pay several sums of money, and no evidence that under a contract several distinct sums of money were advanced to several and separate persons, it is concluded and held that Adolph and George Uhl were joint obligors, jointly liable to repay to petitioner the total sum of $226,-339.03. Cf. *Spangenberg* v. *Spangenberg*, 19 Cal. App. 439; 126 Pac. 379.

It is not disputed that petitioner could release and discharge, or compromise and adjust, any debt owing to it. It discharged Adolph Uhl from any obligation to pay it $103,169.52 of the total sum owed. The ultimate question is whether, having done this, petitioner is, under the Federal revenue act applicable, entitled to deduction for all or part of the sum for which Adolph Uhl was discharged. Having concluded that the obligation was a joint obligation, and the facts showing that the coobligor, George Uhl, was solvent, it follows that the voluntary discharge of Adolph Uhl does not entitle petitioner to any deduction. In *American Felt Co.* v. *Burnet*, 58 Fed. (2d) 530, 532, it was held that a valid debt is not ascertained to be worthless where the creditor, for consideration satisfactory to itself, voluntarily releases a solvent debtor from liability. Assuming that Adolph Uhl was insolvent in 1933, a valid debt was not ascertained to be worthless where a creditor, for consideration satisfactory to itself, voluntarily releases an insolvent joint obligor, without going against the solvent coobligor.

We are satisfied that the discharge of Adolph Uhl from his obligation as a joint debtor did not operate to release George Uhl from his obligation as a joint debtor to pay the full amount of the joint debt, less the amount of the note given to petitioner by Adolph Uhl. See Restatement of the Law of Contracts, vol. 1, sec. 117; *Northern Insurance Co.* v. *Potter*, 63 Cal. 157; *Wristen* v. *Curtiss*, 76 Cal. 6; 18 Pac. 81; *Brown* v. *Pacific Coast Agency*, 53 Cal. App. 788; 200 Pac. 977. Section 1543 of the Civil Code of California provides, in part, as follows:

A release of one of two or more joint debtors does not extinguish the obligations of any of the others, * * * nor does it affect their right to contribution from him.

The courts of California have held that the release of one joint debtor from his obligation does not extinguish the obligation of any of the other joint debtors to pay the entire balance due on the joint indebtedness. *Northern Insurance Co.* v. *Potter, supra; Wristen* v. *Curtiss, supra;* and see *Brown* v. *Pacific Coast Agency, supra.* In

the leading case of *Northern Insurance Co.* v. *Potter*, the court stated as follows (p. 158):

Section 1543 of the Civil Code seems to give the same effect to a release in general terms as was given by the English courts to the qualified release, expressly providing that the joint debtors not mentioned in the release should not be discharged. The section provides in effect that the joint debtor who accepts a release shall be held to have consented that the liability of his joint debtor should be continued together with his own liability to contribution.

There is no merit in petitioner's contention that after the release of Adolph Uhl from his obligation to petitioner, George Uhl was liable to petitioner for only one-half of the total amount of the joint indebtedness. After the release of Adolph Uhl, George Uhl continued to be liable for the entire balance due on the joint indebtedness. *Northern Insurance Co.* v. *Potter, supra; Wristen* v. *Curtiss, supra.*

It is held that petitioner is not entitled to a deduction in the year 1933 for a loss on account of the discharge of Adolph Uhl in 1933 from his obligation as a joint debtor.

It is not necessary to determine how a loss, had there been one in the taxable year, would properly be deducted, i. e., whether, under the facts, the claim for a deduction should be as a loss from a bad debt, or as an ordinary loss. But see *First National Bank of Durant, Oklahoma,* 6 B. T. A. 545.

As a result of the above holding, petitioner had a net taxable income for the year 1933 of about $65,270. There are deficiencies in income and excess profits tax.

*Decision will be entered for the respondent.*