EDGAR H. GLEASON, JR. AND ELIZABETH Q. GLEASON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gleason v. Commissioner
Docket No. 9242-90
United States Tax Court
T.C. Memo 1991-418; 1991 Tax Ct. Memo LEXIS 467; 62 T.C.M. (CCH) 600; T.C.M. (RIA) 91418; August 26, 1991, Filed *467 Decision will be entered under Rule 155. Edgar H. Gleason, pro se. James F. Prothro and Emile L. Hebert III, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION In this case we decide whether petitioner is entitled to a $ 33,000 bad debt deduction and an additional $ 1,074 deduction for automobile expenses. Respondent determined a deficiency of $ 4,028.80 in petitioners' income tax for taxable year 1981. Respondent did not determine any additions to tax. The 1981 deficiency resulted because respondent determined that petitioners' net operating loss carryback from 1984 to 1981 should be reduced from $ 20,432 to $ 12,874. That resulted from respondent's determination that petitioners' 1984 Federal income tax return was in error for several reasons. Respondent determined that petitioners failed to report $ 604 of dividend income, and $ 608 of director's fees. Respondent conceded these two issues at trial. Respondent also determined that petitioners improperly claimed a $ 4,519 bad debt deduction for several debts and improperly deducted $ 1,559 for depreciation for their automobiles. Petitioner conceded these two issues at trial. *468 After concessions, two issues remain for decision: (1) Whether petitioners are entitled to a business bad debt deduction under section 166 relating to a $ 33,000 promissory note by Vernon Chester Moore, Jr., and Elizabeth Ann Canady Moore as wholly worthless in 1984. We hold they are. (2) Whether petitioners are entitled to deduct an additional $ 1,074 of automobile and truck expenses for 1984 under section 162. We hold they are not. All references to petitioner in the singular are to Edgar H. Gleason, Jr. All section references are to the Internal Revenue Code as amended and in effect for 1984. All Rule references are to the Tax Court Rules of Practice and Procedure. Some of the facts have been stipulated and are so found. FINDINGS OF FACT Petitioners resided in Shreveport, Louisiana, when the petition was filed. During 1981 petitioner owned and operated a petroleum products distributorship called Gleason Exxon. He sold petroleum products to petroleum retailers. In 1981, he reported $ 3,658,369 in gross sales, and deducted $ 3,190,905 as cost of goods sold for a gross profit of $ 467,464. He also owned a service station in Belcher, Louisiana, which he leased to an *469 operator. He sold both the bulk fuels business and the service station on September 1, 1981. Mr. Jimmy Ray Harkness managed petitioner's petroleum products distributorship in 1981. He knew of petitioner's business relationship with Mr. Moore, the magnitude of sales to Mr. Moore, and the magnitude of the Moore debt. Petitioner also engaged in real estate activities, including sales, appraisals, and management in 1984. 1. Bad Debt Deduction
One of the retailers to whom petitioner sold petroleum products in 1981 was Vernon Chester Moore, Jr. (Mr. Moore). Mr. Moore operated a convenience store in Lynn Park off Lynnwood Avenue in the Shreveport area where he sold retail gasoline. He later operated the Belcher Exxon service station, a convenience store and gasoline service station, which he leased from petitioner until petitioner sold it. Mr. Moore accumulated part of the debt at the Lynn Park store as well as the Belcher Exxon station. Mr. Moore was married to Elizabeth Ann Canady Moore (Mrs. Moore) during 1981 and for several years thereafter. They had two children about 13 and 15 years old in 1984. Mrs. Moore did not participate in Mr. Moore's business. Mr. Moore purchased *470 significant amounts of petroleum products from petitioner in 1981, primarily gasoline tanker loads. A typical load of gasoline cost more than $ 10,000 in that area of the country in 1981. The sale of tanker loads was not made on consignment. Mr. Moore did not pay currently for all of the products that he purchased, and his indebtedness to petitioner grew to be $ 33,000. Petitioner's only indebtedness from the Moores related to Mr. Moore's purchase of petroleum products from petitioner. As part of his attempts to obtain payment from Mr. Moore, petitioner arranged for the Moores to sign a promissory note to pay $ 33,000 to Gleason Exxon, thus to petitioner. The note provided for consecutive monthly installments of $ 199.98 beginning on October 10, 1981, until principal and interest were paid in full. Interest was 4 percent per annum. The Moores signed the note on August 31, 1981. The note was notarized by Robert B. Wyche. Petitioner purchased retail gasoline from Mr. Moore for petitioner's vehicles. Mr. Moore was given credit for the $ 199.98 monthly payments by offsetting amounts owed by petitioner to Mr. Moore for his retail gasoline purchases. Such credits or actual payments *471 were made for each month from October 2, 1981, to November 1, 1983. Payments and credits totaled $ 5,199.48. Somewhere around 1983 the Moores initiated a bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Louisiana. Around late 1983 or early 1984, Mr. Moore left his wife and children and that area of Louisiana. Mr. Moore remained listed as a party to the bankruptcy, but he made no effort to help Mrs. Moore pay creditors. Around November 1983, Mrs. Moore approached petitioner to see if he would help her get approval of her bankruptcy plan. Petitioner believed that Mrs. Moore could not pay any significant amount on the note. To accommodate her, he agreed to reduce the claim in bankruptcy to $ 1,600. However, he had no intention of simply forgiving the debt. On December 8, 1983, the Moores' bankruptcy counsel, Mr. Edmund M. Thomas, wrote to petitioner to outline a proposal relating to payment of the Moores' debt to petitioner. On January 27, 1984, Mr. Thomas wrote to petitioner and stated: "This is just to verify the fact that the total amount owed is $ 1,600.00, and that after Beth pays 32 monthly installments of $ 50.00 each, the account *472 will be paid in full." On July 10, 1984, Mr. Thomas filed an amendment to the Moores' wage earner's plan, under the supervision of the bankruptcy court, to include the now $ 1,600 debt, and to raise the monthly payment from $ 485.99 to $ 535.99. Petitioner believed that the amended plan applied strictly to Mrs. Moore, and had nothing to do with Mr. Moore. Mrs. Moore apparently did not ever make that increase in her monthly payment. She did pay $ 482.52 per month to the trustee in bankruptcy for a while. Petitioner never received any of that money. He never received any more in payment on the debt. Mrs. Moore was later discharged from her duty to pay the monthly amount. Mr. Moore did not return to the Shreveport area, and Mrs. Moore has remarried. Her new married name is Mrs. Belk. Petitioners' returns were prepared by Rayeburn G. Cook, a certified public accountant. Petitioner did not claim a bad debt deduction on his 1984 return or for any other year based on the $ 33,000 note from the Moores. Petitioner did deduct several smaller bad debts on his 1984 return that were maintained on petitioner's statement cards. Petitioner kept the statement cards in a different location *473 than his records concerning the $ 33,000 note from the Moores. Petitioners claimed $ 19,219 as a bad debt deduction on Schedule C of their 1984 return. Respondent's notice of deficiency provides, as to this issue: No allowance has been made regarding Vernon Moore because you have not verified any amount nor the date it would be considered a bad debt. $ 1,600 was added to the debtor's bankruptcy in July, 1984. This bankruptcy case was closed in 1985.
2. Deduction for Automobile and Truck Use
Petitioners had four vehicles in 1984: a 1978 station wagon, a van, a car for petitioner's wife, and a car for petitioner's son. Petitioner used his vehicle, the 1978 station wagon, largely for business, such as his real estate activities. He kept signs and tools in this vehicle. Petitioner claimed $ 4,093 in car and truck expenses on Schedule C, Profit (or Loss) from Business or Profession for his sales agent sole proprietorship. Respondent determined that this amount should be reduced by $ 1,074, and that the amount allowed should be $ 3,019. OPINION 1. Bad Debt Deduction
Petitioners deducted the Moore debt as a business bad debt under section 166(a)(1). Section *474 166(a)(1) allows as a deduction any debt that becomes wholly worthless within the taxable year. Respondent's determination is presumed correct and the burden of proof is on petitioner. Rule 142(a). Petitioners must first prove that the debt in question is bona fide in that it arose from a debtor-creditor relationship based on a valid and enforceable obligation to pay a determinable sum of money. Adelson v. United States, 737 F.2d 1569 (Fed. Cir. 1984); Meyer v. Commissioner, 547 F.2d 943, 946 (5th Cir. 1977) citing Iowa Southern Utilities Co. v. United States, 172 Ct. Cl. 21, 348 F.2d 492, 497 (1965); Continental Bankers Life Insurance Co. of the South v. Commissioner, 93 T.C. 52, 66 (1989); Holderness v. Commissioner, T.C. Memo 1977-5, affd. per curiam 615 F.2d 401 (6th Cir. 1980); sec. 1.166-1(c), Income Tax. Regs.
2. Substantiation of the Debt
Respondent argues that petitioner is not entitled to the bad debt deduction on the grounds that the debt is not bona fide and that petitioner did not substantiate the amount. In a closely related *475 theory, respondent also asserts that petitioner has not shown that the debt was a business debt as opposed to a personal debt. We believe the debt to be bona fide and business related. Petitioner sold a significant amount of petroleum products to Mr. Moore. He had no other financial dealings with Mr. Moore. Mr. Moore's debt grew quite large. The record contains a notarized promissory note signed by Mr. and Mrs. Moore. Mr. Harkness verified that Mr. Moore owed a debt of about this amount. Mrs. Moore knew that Mr. Moore had run up a substantial debt for petroleum products to petitioner. Respondent argues that the underlying debt from Mr. Moore to petitioner is not proven since petitioner did not offer into evidence records proving sales of petroleum products from petitioner to Mr. Moore. However, we are convinced from the testimony of petitioner and Mr. Harkness that the business relationship existed and that sales of this magnitude occurred. Mr. Harkness testified that he thinks petitioner is a good business person, but that others have failed to pay for large amounts for their petroleum product purchases. Respondent contends that petitioner's explanation should not be believed. *476 Respondent argued that petitioner should be disbelieved because of his failure to claim the $ 33,000 bad debt deduction for 1984 while deducting other smaller bad debts. Petitioner testified that he forgot to deduct it because his records of the Moore debt were not maintained in the same place as the statement cards for the other bad debt records. We find petitioner to be credible with respect to the Moore bad debt. His explanation was corroborated by other testimony and documents such as the note. Therefore, we conclude that the debt was a bona fide business debt, arose from a debtor-creditor relationship, and was based on an enforceable obligation to pay $ 33,000. Respondent also asserts that petitioner may have reduced or compromised the debt during the bankruptcy. When there is a mutual settlement agreement we must view all the considerations moving between the parties, and when the agreement provides for the release of a debt for satisfactory consideration, there is no support for a bad debt deduction. Harrison v. Commissioner, 59 T.C. 578, 593 (1973). However, here there was no release of the debt for satisfactory consideration. A valid debt may *477 not be the basis for a bad debt deduction because of worthlessness where the creditor taxpayer voluntarily and gratuitously releases a solvent debtor from liability. Thompson v. Commissioner, 6 T.C. 285, 294 (1946), affd. 161 F.2d 185 (2d Cir. 1947); Uhl Estate Co. v. Commissioner, 40 B.T.A. 1223, 1231 (1939), affd. 116 F.2d 403 (9th Cir. 1940). However, if the creditor taxpayer releases an insolvent debtor from a debt or compromises a debt, a bad debt deduction may still be available because it is the debtor's insolvency and inability to repay, and not the release of the debt by the creditor taxpayer, that caused the debt obligation to be worthless. Roth Steel Tube Co. v. Commissioner, 620 F.2d 1176, 1181-1182 (6th Cir. 1980), affg. 68 T.C. 213 (1977); cf. Loewi & Co. v. Commissioner, 23 T.C. 486, 491 (1954), affd. 232 F.2d 621 (7th Cir. 1956) (release of debt means there is no longer a debt to become worthless); First Nat'l Bank of Durant, Okla. v. Commissioner, 6 B.T.A. 545, 548 (1927). This is based on the general *478 rule at common law that a creditor's unilateral promise to accept less than the full amount due from a debtor in discharge of his debt is not enforceable for lack of consideration. Roth Steel Tube Co. v. Commissioner, supra at 1181. There was no consideration by Mrs. Moore to petitioner that resulted in the reduced debt because Mrs. Moore was insolvent. Consequently, respondent's theory that the debt was reduced or compromised is not applicable here. 3. Worthlessness and the Moores' Bankruptcy
Respondent argues that petitioner has not shown that the debt became worthless in 1984. Respondent asserts that it may have become worthless in 1983 since Mr. Moore's last payment was in November 1983, and the Moores may have filed for bankruptcy in 1983. Worthlessness may have occurred in 1985 since the Moore bankruptcy was apparently not concluded before the end of 1984. Respondent argues it is inconceivable that petitioner would forget about a bad debt in such a large amount while remembering to deduct small bad debts. A bad debt is deductible only in the year it becomes worthless. Denver & Rio Grande Western Railroad Co. v. Commissioner, 32 T.C. 43, 56 (1959), *479 affd. 279 F.2d 368 (10th Cir. 1960); Feinstein v. Commissioner, 24 T.C. 656, 658 (1955). The taxpayer has the burden of proving that the debt became worthless during the year in question. Estate of Mann v. United States, 731 F.2d 267, 275 (5th Cir. 1984); James A. Messer Co. v. Commissioner, 57 T.C. 848, 861 (1972); Rule 142(a). When or whether a debt became worthless is a question of fact, the answer to which lies in an examination of all the circumstances. Boehm v. Commissioner, 326 U.S. 287, 293, 90 L. Ed. 78, 66 S. Ct. 120 (1945); Estate of Mann v. United States, supra at 275; Dallmeyer v. Commissioner, 14 T.C. 1282, 1291 (1950). When a debt becomes worthless is to be determined by the trier of fact, Cole v. Commissioner, 871 F.2d 64, 66 (7th Cir. 1989), affg. a Memorandum Opinion of this Court. The taxpayer must show some identifiable event or group of facts which proves worthlessness in the year claimed. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 71 L. Ed. 1120, 47 S. Ct. 598 (1927); Dallmeyer v. Commissioner, supra at 1291-1292. *480 There is no standard test or formula for determining worthlessness within a given taxable year; the determination depends upon the particular facts and circumstances of the case. Lucas v. American Code Co., 280 U.S. 445, 449, 74 L. Ed. 538, 50 S. Ct. 202 (1930); Crown v. Commissioner, 77 T.C. 582, 598 (1981); Dallmeyer v. Commissioner, supra at 1291. In Estate of Mann v. United States, supra, the court said: Debts are wholly worthless when there are reasonable grounds for abandoning any hope of repayment in the future, Dallmeyer v. Commissioner, 14 T.C. 1282, 1292 (1950), and it could thus be concluded that they have lost their "last vestige of value." Bodzy v. Commissioner, 321 F.2d 331, 335 (5th Cir. 1963). This will usually entail proof of the existence of identifiable events which demonstrate the valuelessness of the debts. Riss v. Commissioner, 478 F.2d 1160 (8th Cir. 1973); Crown v. Commissioner, 77 T.C. 582, 598 (1981); Hubble v. Commissioner, 1981 T.C. Memo 625, 42 T.C.M. 1537, 1544 (1981).
Estate of Mann v. United States, supra at 276. *481 We note that in Dallmeyer v. Commissioner, supra, the Court found that a debt became worthless in the year it was discharged in bankruptcy. Under the facts in that case, there was sufficient prospect of collection to find the debt had value in the prior year, in which the debtor declared bankruptcy. In contrast, here we find that the debt became worthless in the year prior to its discharge in bankruptcy because of the following facts. Mr. Moore's last payment occurred in later 1983. It appears that the bankruptcy was filed in 1983. In late 1983 or early 1984 Mr. Moore left the area leaving his wife and two children. Still, Mrs. Moore was attempting to work out a payment plan. However, it became clear to petitioner that Mrs. Moore was unable to pay any significant amount of the debt. Around that time, petitioner concluded the Moore debt was essentially worthless. Mr. Thomas' letter dated January 27, 1984, was written to confirm an apparent understanding that Mrs. Moore would make payments of $ 50 per month based on a $ 1,600 debt amount. On July 10, 1984, Mr. Thomas filed an amendment to increase the monthly payment for the Moore's wage earner plan *482 by $ 50. However, Mrs. Moore never increased her payments by that amount. Although the record is unclear, we will assume that the Moore's discharge in bankruptcy occurred after 1984. However, we do not believe that it was necessary for petitioner to have waited until the Moore's discharge in bankruptcy under these facts. See Person Construction Co. v. Commissioner, 116 F.2d 94, 95 (7th Cir. 1940), affg. a Memorandum Opinion of this Court. The Court of Appeals for the Fifth Circuit, the circuit to which this case would be appealable, has held a taxpayer's uncorroborated oral testimony that he was unable to collect on a debt is insufficient to establish worthlessness, Eagle v. Commissioner, 242 F.2d 635, 637 (5th Cir. 1957), revg. 25 T.C. 169 (1955), and that a taxpayer's uncorroborated oral testimony of the debtor's bankruptcy is insufficient to establish worthlessness. Lunsford v. Commissioner, 212 F.2d 878, 883 (5th Cir. 1954). However, here, there was corroboration of petitioner's testimony. There are signs of worthlessness in 1983, 1984, and 1985. However: It is obvious that there is no precise *483 test for determining worthlessness within the taxable year and neither the statutory enactment, its regulations nor the decisions attempt such an all-inclusive definition. * * * Furthermore, it is often impossible to select a single factor or "identifiable event" which clearly establishes the time at which a debt becomes worthless and thus deductible. * * * Minneapolis, St. Paul & Sault Ste. Marie R. R. Co. v. United States, 164 Ct. Cl. 226, 240 (1964). On balance, we believe that the note became fully worthless in 1984. Accordingly, we hold that petitioners are entitled to deduct $ 27,800.52 ($ 33,000 less payments and credits of $ 5,199.48) as a business bad debt under section 166 in 1984. 4. Deduction for Automobile and Truck Expenses
Petitioner deducted automobile and truck expenses under section 162. Section 162 allows the deduction of ordinary and necessary business expenses. Respondent argues that petitioner has not shown that all of the use of his vehicle was business use. Thus, the issue for decision is whether and to what extent petitioner used his station wagon for business. Petitioner admits incidental personal use of his station *484 wagon. However, he argues that because he used other family vehicles for business at least as much as he used his vehicle for personal use and did not deduct expenses related to those other cars, on balance what he did was fair. Petitioner's only evidence on this issue was his testimony. Respondent's determination is presumed correct, and petitioner must prove entitlement to the deduction as well as its correct amount. Rule 142(a). We are not persuaded that more than $ 3,019 of the $ 4,093 amount claimed is appropriate for this deduction. Therefore, we sustain respondent as to this issue. To reflect concessions and the foregoing, Decision will be entered under Rule 155.