GENERAL MORTGAGE AND LOAN CORPORATION vs. GUARANTY
MORTGAGE AND SECURITIES CORPORATION & others.

Suffolk.   March 29, 1928. — June 28, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Corporation*, Officers and agents.   *Equity Jurisdiction*, To relieve from the results of fraud, To enforce director's liability.   *Conspiracy.   Fraud. Res Judicata.   Attorney at Law.   Equity Pleading and Practice*, Answer.

M was a director and stockholder in a corporation doing a general money lending business and possessing large cash and liquid assets, and P was the largest stockholder and general manager.   J and D, desiring to gain control of the corporation for their personal gain irrespective of benefit to it, approached M, who agreed to and did procure the transfer to D and J of sufficient stock in the corporation to give them control.   A meeting of the directors thereupon was held in which P and another were removed from office, and D and J placed in control of the corporation as officers and directors; M continued to be a director.   J and D remained in control for several months, during which period they received salaries as officers, for their personal benefit collected from borrowers large inspection fees and fees for examination of titles, derived personal benefit from their ability to obtain loans for others from the corporation, made large loans of the corporation's funds on insufficient security in order that they might receive fees therefrom, and authorized the payment of large fees to an attorney at law acting for the corporation, and a stenographer's expenses, in matters in which the corporation was only a nominal party and from which it derived no benefit.   The corporation sustained large losses as a result of such practices.   During this period M, although he felt he had but little interest in the corporation, and, except for salaries voted to J and D, had no knowledge of any fees or commissions received by them, aided J and D in every way by his vote or otherwise, made no proper investigation of the loans above described, and was working for his own benefit and not for that of the corporation.   J and D subsequently were removed from office in the corporation in mandamus proceedings instituted by P. In a suit in equity thereafter brought by the corporation against J, D, M, and others to obtain restitution for its losses, it was *held*, that

(1)  The acts of J and D in pursuance of their scheme were done in bad faith and were a breach of their fiduciary duty to the plaintiff, whether they acted as directors *de jure* or *de facto;*

(2)  M in bad faith participated with J and D in obtaining control of the plaintiff unlawfully and in perpetrating a fraud upon it; and was liable as a coconspirator for the acts of the others in pursuance of the conspiracy;

(3)  Apart from his liability as a conspirator, M, while not responsible as a director of the plaintiff for errors of judgment, was charged with the

duty of managing its affairs honestly and in good faith; and was responsible as a director for the losses sustained by the corporation on the loans above described, as well as for unlawful payments for salaries for services which were of no benefit to the plaintiff;

(4) The directors were without authority to use the plaintiff's funds for legal fees and stenographer's expenses in matters in which the plaintiff had no real interest; and M was liable for such payments;

(5) M could be compelled in this suit to make restitution for the plaintiff's losses.

One McC was a director of the plaintiff in the suit above described and was one of the defendants. He also had been a respondent in the mandamus proceedings brought by P. Those proceedings were referred to an auditor, whose report, upon which a writ of mandamus was ordered to issue, contained certain findings as to McC. The plaintiff's bill contained allegations as to the mandamus proceedings, which were admitted by McC in his answer. Concerning McC, the only findings by a master, to whom the suit was referred, were to the effect that McC was an intimate friend of M, and followed him on every vote, honestly believing that the exclusion of P would benefit the corporation; and that McC neither obtained financial benefit from the plaintiff except his fee for attendance at the directors' meetings, nor knew of the acts of J, D, and M. *Held*, that

(1) The doctrine of *res judicata* did not apply to the findings of the auditor respecting McC, since the parties and the issues were not the same in the mandamus proceedings and in the suit in equity;

(2) McC's answer could not be construed as an admission of the truth of the auditor's findings;

(3) The auditor's findings could not be considered in the absence of their adoption by the master;

(4) Upon the master's findings, there was no ground for holding McC liable.

A certain attorney at law also was a defendant in the suit in equity. He held no office in the plaintiff corporation, but was merely employed by its apparent officers to bring and defend suits and actions, his services being chiefly in the defence of the mandamus proceedings brought by P. The master found that the attorney sincerely believed that P's control was detrimental to the plaintiff, and that he did all he could to put J and D in control, and to help his friend M. There was no finding that the attorney did not believe he properly could render the services to the plaintiff, nor that he knew such services would not benefit it. *Held*, that, although his services were of no benefit to the corporation, the attorney could not be charged with liability for the amounts paid him for such services.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 7, 1925, and described in the opinion.

All the defendants except Meagher, McCarthy and Reed settled with the plaintiff.

The defendants Meagher, McCarthy and Reed demurred, and also filed a plea to the bill. By interlocutory decrees entered by order of *Wait*, J., and *Pierce*, J., respectively, the demurrers and the plea were overruled. These defendants appealed.

The suit thereupon was referred to a master. Material facts found by him in his report and supplemental report are stated in the opinion. The master also found that the plaintiff was a corporation engaged in a general money lending business, and as follows: "During the course of the incumbency in office of the Downey group, from April 21, 1924, to January 27, 1925, the date of the judgment in the mandamus suit against Downey and Johansson, the business of the plaintiff corporation was entirely in the hands of Downey and Johansson, Johansson acting as its treasurer and general manager, and Downey as its attorney. Landers, the president of the plaintiff corporation, and Meagher, having disposed of their shares to Downey, felt that they had no further interest in the corporation except the single shares which were on the books of the corporation in their respective names but which were actually owned by Downey, and in every way aided by their votes or otherwise in carrying out the wishes of Johansson and Downey. . . . I find that except for salaries voted to Johansson and Downey, Francis T. Meagher had no knowledge of any fees or commissions received by both or either of them."

The suit thereafter was heard upon the master's reports by *Pierce*, J., by whose order were entered an interlocutory decree confirming them; and a final decree adjudging the defendant Meagher liable to the plaintiff in the sum of $9,524.30, and interest, and dismissing the bill as to the defendants McCarthy and Reed. The plaintiff and the defendant Meagher appealed from the final decree.

The case was argued at the bar in March, 1929, before *Rugg*, C.J., *Braley*, *Crosby*, & *Wait*, JJ., and afterwards was submitted on briefs to all the Justices except *Pierce*, J.

*W. Powers*, for the plaintiff.

*J. F. Bassity*, for the defendants Meagher, McCarthy and Reed.

CROSBY, J.   This is a bill in equity brought for an accounting, and to recover for secret profits and corporate funds alleged to have been unlawfully expended by the defendants, and for other relief.   During the course of the hearing six defendants settled their differences with the plaintiff by paying to it various amounts.   The only defendants remaining are Francis T. Meagher, John A. McCarthy and George W. Reed, Esq.   Demurrers filed by these three defendants were overruled; the same defendants also filed a plea in bar which was overruled; the questions of law thereby raised not having been argued, are to be taken as waived. The case was referred to a master whose report and supplemental report were confirmed and a final decree was entered against the defendant Francis T. Meagher, and in favor of the defendants McCarthy and Reed.   The plaintiff and the defendant Francis T. Meagher appealed from the final decree.

The bill alleges that the plaintiff corporation had a large amount of cash and liquid assets at all times during which the alleged wrongful acts of the defendants were alleged to have been committed; that four of the defendants who have settled with the plaintiff were directors and stockholders of the defendant corporation; that one defendant who settled was president of the plaintiff; that the defendants Meagher and McCarthy were directors and stockholders of the plaintiff; that the defendant Reed was an attorney at law and counsel for Meagher and other defendants; that the defendant corporation, Johansson and Downey, all of whom have settled with the plaintiff, fraudulently conspired together to defraud the plaintiff, and that Meagher, McCarthy, Reed and other defendants, at the time or later, joined in the conspiracy.   The bill alleges the conspiracy to be that the defendants should obtain control of the plaintiff corporation and of the administration of its funds by the purchase of a majority of its voting stock, by depriving the holders of certain other voting stock of their rights to vote the same, by excluding certain of its directors from the directors' meetings, and by the pretended election of certain of the defendants as directors and as other officers; that the defendants, or some of them, should, after obtaining control of the plaintiff or its

board of directors, cause a sale of all the common stock then in its treasury to one of the directors, who should buy it on his own behalf and on behalf of another director and the defendant corporation, at a price made by the defendants and known to them to be inadequate and in fraud of the plaintiff; that the defendants should, after obtaining control of the plaintiff and its funds, administer such funds for their own benefit in fraud of the plaintiff, and "divert, and retain to their own use various secret profits by means of fees and extra bonuses to be charged by them on loans to be made by their procurement, fees as counsel, fees for inspection, salaries, and by other means, without due disclosure thereof to the board of directors or to the stockholders of the complainant; should in their own interests deprive the complainant of legitimate profits; should use the moneys or a part of the moneys of the complainant as their own and mingle them with their own funds, and should in general do such things as they thereafter did and as are hereinafter set forth." The bill further alleges many other unlawful acts on the part of the defendants which resulted in serious losses to the plaintiff and which are referred to and dealt with in the master's report.

The master found that, before April 21, 1924, one Pheeny, who is not a party to this suit, was the largest stockholder of the plaintiff, and acted as its general manager and that he had practical control of the corporation; that after that date and until January 27, 1925, the business of the plaintiff was entirely in the hands of the defendants Johansson and Downey, who had then become directors of the plaintiff, and one of them was acting as its treasurer and general manager and the other as its attorney; that the desire of these two defendants to obtain a majority of the stock of the plaintiff "was for the purpose of personal gain only. The profits that might be earned by the corporation through their activities was only a secondary consideration"; that they did not invest any of their personal funds in the endeavor to obtain a controlling interest, but that they had a vital personal interest in its management; that one of them received a salary of $6,000 a year as treasurer and general manager

and collected inspection fees from borrowers amounting to large sums; that the other acted as a member of the loan committee for which he received a salary, and collected fees from borrowers in the examination of titles, and also benefited by his ability to obtain loans from the plaintiff for his personal clients whom he charged a commission in addition to his fees as attorney. It was also found that these two directors from April 21, 1924, to January 27, 1925, invested funds of the corporation by loaning money on both good and bad securities; that they made two large loans on insufficient security and that the corporation thereby lost $40,296.49; that these loans were made in order to enable them to obtain large inspection and counsel fees. The master further found the total damage to the plaintiff by reason of the unlawful acts of the defendants, and that most of the acts which caused the damage were prompted by these two directors who were the actual beneficiaries. As the evidence is not reported, the findings of the master are conclusive unless it appears from the report itself that they are plainly wrong. We will first deal with the findings of the master against the defendant Meagher.

It is plain that the loans made by the two directors before referred to, in pursuance of their scheme to get control of the corporation "for the purpose of personal gain only," were a breach of the fiduciary duty which they owed to the plaintiff. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 476. *Allen-Foster-Willett Co., petitioner*, 227 Mass. 551, 556. *Abbot* v. *Waltham Watch Co.* 260 Mass. 81, 95, 96. These directors purported to act as directors of the corporation and were liable, if they acted in bad faith, whether they were directors *de jure* or *de facto*. *Thayer* v. *New England Lithographic Co.* 108 Mass. 523, 527. *Hudson* v. *J. B. Parker Machine Co.* 173 Mass. 242, 246, 247. *Lazenby* v. *Henderson*, 241 Mass. 177, 180. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 430.

Meagher was a director of the plaintiff corporation, and while not responsible for errors of judgment, he was charged with the duty of managing its affairs honestly and in good faith. If this duty was violated and resulted in impairment

of the corporation assets and loss of its property, he can be compelled in equity to make restitution.   The findings of the master show that Meagher participated in the plan of Johansson and Downey to obtain control of the plaintiff; that in March, 1924, these two directors of the Guaranty Mortgage and Security Corporation, and one Johnson, another director, caused a vote to be passed by the defendant corporation to authorize them to purchase the control of the stock in a "similar corporation" and employed one Bishop, a broker, to negotiate for such purchase; that Bishop saw Meagher and asked him if he could obtain a controlling interest in the plaintiff for his customers; that Meagher told him that he was able to do so, that he felt he could deliver to Bishop's customers the stock of his brother and that of two other stockholders, and his own shares, and, with the two hundred and sixty-three shares held by one Mulready and the purchase of one hundred and fifty-five shares of common stock in the treasury, he could transfer a majority of the common stock.   The master also found that on April 13, 1924, Meagher, in pursuance of the plan to obtain a majority of the common stock, went to see Mrs. Mulready and endeavored to purchase her stock and was incensed because she had sold it to Pheeny; that the next day he informed his attorney, the defendant Reed, of his interview with Mrs. Mulready, and, accompanied by Reed, he again saw Mrs. Mulready and informed her that she had been "tricked" by Pheeny and that she was entitled to a larger sum for her stock; that he then obtained an option from her to purchase it on its recovery from Pheeny; that afterwards a bill in equity was brought by Reed in the name of Mrs. Mulready against Pheeny to recover the stock; that the suit was to be without any expense to her; that on April 16, 1924, Meagher met Bishop and told him he might obtain control and sell the stock if his (Bishop's) customers would act quickly.   A meeting was thereafter arranged between Johansson, Downey and Meagher, and a written agreement was then entered into by which Meagher agreed to deliver his own shares and those of his brother to Bishop.   On the same day a regular meeting of the directors of the plaintiff

was held at which Meagher was present and presented certain votes prepared by Reed, all of which were passed; thereunder Pheeny was removed as director and from the office of vice president and general manager, and Barbara M. Moran was removed as director and from the office of clerk of the corporation; Johansson and Downey were then elected directors, and Meagher was appointed general manager. Meagher thereupon changed the locks on the door of the office and installed his daughter as stenographer in place of Miss Moran. Between April 16 and 21, 1924, Meagher was paid $500 out of the funds of the defendant corporation, to be paid to Mrs. Mulready as an earnest to bind the contract to obtain the stock from her when it was recovered from Pheeny. At an adjourned meeting of the directors of the plaintiff corporation on April 21, 1924, at which Meagher was present, Johansson was elected clerk and treasurer to fill vacancies in these offices, and he was also elected general manager to fill the office made vacant by the resignation of Meagher.

It is obvious from the foregoing findings that Meagher was a party to the fraud and participated in the scheme to obtain control of a majority of the stock in the plaintiff corporation. The findings of the master clearly indicate that Meagher acted jointly with the others in bad faith in perpetrating a fraud upon the plaintiff by obtaining control of its stock by unlawful means. In these circumstances each conspirator is liable for the acts of the others in pursuance of the conspiracy by which the wrong was finally accomplished. *Spaulding* v. *Knight*, 116 Mass. 148. *Emmons* v. *Alvord*, 177 Mass. 466, 470. *Gurney* v. *Tenney*, 197 Mass. 457, 466.

Apart from his participation in the conspiracy Meagher is responsible for the losses sustained by the plaintiff. It is found that in every way he aided by his vote or otherwise in carrying out the wishes of his coconspirators; that he was working for his own benefit and not for the benefit of the corporation. It is found that he made no proper investigation of the loans above referred to and which resulted in large losses to the plaintiff. It is manifest that he is chargeable with liability on account of such losses, as well as for the

payments unlawfully made on account of salaries for services which not only were of no benefit to the corporation, but were detrimental to its interests.   The same is true of the payments made for legal services rendered by Mr. Donahue and Mr. Parker, the amount paid a stenographer, and the services rendered by Reed, in suits in which this plaintiff had no interest.   The directors were without authority to use the corporate funds for expenses in connection with such suits. *Hooker, Corser & Mitchell Co.* v. *Hooker*, 88 Vt. 335.   *Wicker-sham* v. *Crittenden*, 106 Cal. 329.   The fact that the corporation was nominally a party in one of these suits did not authorize the directors to expend corporate funds for the purpose of carrying it on, even if such expenditure was voted by the directors.   *Stratton Massachusetts Gold Mines Co.* v. *Davis*, 222 Mass. 549.   *Chabot & Richard Co.* v. *Chabot*, 109 Maine, 403, 407.

The findings, that two of the directors collected $1,800 each as inspection fees for obtaining loans for borrowers from the plaintiff, and that later further loans were made for which these directors received further fees of $510, warranted a finding that such sums should have been turned over to the plaintiff.   *Lazenby* v. *Henderson, supra.*   *Putnam* v. *Handy*, 247 Mass. 406.   *Goodbody* v. *Delaney*, 12 Buch. 140.   The defendant Meagher is chargeable with $9,524.30, being one sixth of the losses on loans improperly made and sums paid for litigation in which the plaintiff had no interest.

Apart from the liability of Meagher as a conspirator, he is chargeable as a director for failure to administer the affairs of the corporation with care, diligence, honesty and good faith as required by the fiduciary duty imposed upon him.   *United Zinc Co.* v. *Harwood, supra.*   *Putnam* v. *Handy, supra.* *Folsom* v. *Smith*, 113 Maine, 83.

As to the defendant McCarthy, the master states that he was an intimate friend of Meagher and was elected a director from the preferred stockholders; that he at no time owned common stock but purchased with his own money a block of preferred stock; that he "followed Meagher in every vote, believing that Meagher, by excluding Pheeney, would benefit the corporation.   He at no time obtained any financial

benefit from the plaintiff corporation except a fee of Ten Dollars ($10) for attendance at each meeting of the directors. There was no evidence from which I can find that McCarthy had knowledge of the acts of Johansson, Downey and Meagher, nor knew that they were all working for their own benefit and not for the benefit of the corporation. I find that McCarthy voted with Meagher because of his friendship for him and his desire to help him in every respect, and that he honestly believed that the exclusion of Pheeney would benefit the corporation." The master further found that on May 20, 1924, Pheeny and Miss Moran brought a petition for mandamus against the acting directors, asking for reinstatement and to avoid the election of Johansson and Downey, and a judgment was entered in favor of the petitioners. This case was heard by an auditor. His report, which is referred to in the bill in paragraph 8, is printed in the record. The answer of McCarthy admits "so much of the allegations contained in paragraph 8 of the bill as pertain to a petition on a writ of mandamus, the hearing and decree thereon, and denies all other allegations." The doctrine of *res judicata* does not apply to the adverse findings made by the auditor respecting McCarthy, because the parties in that case were not the same as those in the present case, and the issues in the two cases were entirely different. There the petitioners were seeking to be reinstated as directors, and the finding of the auditor concerning McCarthy's conduct related to that issue. The present case is an effort to recover money taken from the plaintiff in violation of the obligations and the duties of directors. It is not contended that McCarthy received any of the money, or that he knew that any of his codirectors were taking money unlawfully. His answer to the present bill cannot be construed as an admission of the truth of the findings made by the auditor. It follows that the findings of the auditor in the mandamus case cannot be considered in the present case unless adopted by the master. The only findings made by the master with respect to McCarthy are above quoted. We find nothing in the master's report to show that McCarthy did not act honestly and with as much capacity as he possessed for the

interests of the corporation.   All that he did was to believe that the conduct of his friend Meagher was better for the corporation than the plans of Pheeny.   Although he was mistaken in this, there was no dishonesty in making the mistake and he had no knowledge of the corruption on the part of Meagher and of the other faithless directors.   Upon the findings of the master there is no ground for holding McCarthy liable.

The question remains whether the defendant Reed should be held liable for any losses incurred or payments made out of the corporate treasury.   The plaintiff does not contend that he can be held as a conspirator, but contends that he is liable for the amounts paid him for services as an attorney, on the ground that such services were not furnished to the corporation, but to the individual defendants.   He acted merely as an attorney.   At no time here material did he hold an office in the plaintiff corporation.   It appears from *Reed* v. *Pheeney*, 253 Mass. 90, that he was once clerk and director but resigned these offices in October, 1921.   His rights and obligations, therefore, must be treated on the footing that he was an attorney employed by the apparent officers of the plaintiff to bring and to defend suits and actions.   The first group of matters in which he was concerned appears to have reference to the stock of the plaintiff held by Mrs. Mulready. That case, so far as we can know about it outside the present record, is reported in *Mulready* v. *Pheeny*, 252 Mass. 379. The suits or actions brought by Reed were authorized to be brought by Meagher, a director, and were part of a plan to obtain control of the plaintiff corporation.   It is difficult to discover to what many of the items of charge appearing in Reed's bill relate.   In some of them no accounts are carried out.   There do not appear to be any items of charge for services in the trial of the Mulready cases, for printing the brief or argument before this court.   The master makes no finding as to the amount of payments made by the plaintiff in the Mulready cases.   The main items of Reed's bill relate to the petitions for mandamus brought by Pheeny and Moran to be reinstated as directors.   The plaintiff corporation was named as a party defendant in those petitions, and

the dishonest directors were also made parties defendant, but they were at that time *de facto* directors of the corporation. The master found that Reed "sincerely believed that Pheeny's control was detrimental to the interests of the plaintiff corporation and did everything to put the Downey group in control, but was actuated by his desire to help his intimate friend Meagher." We find nothing in the record to show that Reed did not believe that he could properly render the services to the corporation. Of course it now appears that these directors were dishonest and had no right to make the expenditures, but as it appears that Reed acted in good faith, we are of opinion that he is not required to return the money received by him for services honestly rendered. The finding of the master, that the services rendered to the corporation by Reed in no way benefited it, is not material, as there is no finding that he knew that such services would in no way benefit the plaintiff. Upon the master's findings Reed cannot be charged with liability.

The result is that the final decree is affirmed with costs.

*Ordered accordingly.*