**IOWA SOUTHERN UTILITIES COMPANY**
v.
**The UNITED STATES.**
No. 398-60.

United States Court of Claims.
July 16, 1965.

Charles T. Akre, Washington, D. C., for plaintiff, Robert Valentine, of Valentine, Greenleaf & Griffing, Centerville, Iowa, Marion Hirschburg of Hirschburg, Reynolds, Gilchrist & Nutty, Ames, Iowa, and James F. Gordy, of Miller & Chevailier, Washington, D. C., of counsel.

Robert Livingston, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer for defendant, C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

This action for refund of Federal income taxes is brought on the ground that plaintiff is entitled to a bad debt deduction for the calendar year 1953 (or in the alternative for 1954) for the uncollected portion of a judgment obtained by plaintiff.

Plaintiff, a Delaware corporation, was an electrical and gas public utility company doing business in the State of Iowa. In 1952, in a derivative action brought by certain stockholders in behalf of the company, the Supreme Court of Iowa found that from 1923 to 1939 the principal officers of the company, George M. Bechtel, Harold R. Bechtel and J. Ross Lee, named as defendants in the state court action, fraudulently and in breach

of their fiduciary duty as officers and directors, sold ten utility properties to plaintiff for an aggregate purchase price of $12,846,088.96. The court found that this price was greatly in excess of the actual cost of these properties, and that these defendant officers and directors had wrongfully appropriated the profits derived thereby. Judgment for plaintiff was entered against defendants Harold R. Bechtel, George M. Bechtel and J. Ross Lee on remand to the District Court of Appanoose County, Iowa on October 24, 1952, in the principal sum of $2,211,649.68,* exclusive of interest. Judgment was also entered separately against defendant Edward L. Shutts, who was also at various times an officer and director of plaintiff corporation.

The details and background of this litigation are set forth in our findings, and in the comprehensive opinion of the Supreme Court of Iowa in Des Moines Bank & Trust Co. et al. v. George M. Bechtel & Co. et al., 243 Iowa 1007, 51 N.W.2d 174 (1952), herein referred to as the Des Moines Bank case. The parties here have stipulated that, for the purposes of this proceeding, the facts found by the Supreme Court of Iowa in the Des Moines Bank case are true.

The ten properties acquired by plaintiff from defendants have been retained by it throughout the period involved in the present suit, with minor exceptions as to certain properties sold or abandoned by plaintiff as specified in the findings herein.

Plaintiff's Federal income tax returns were timely filed and tax liabilities were paid for the calendar year 1952 in the total sum of $951,163.81, for 1953 in the total sum of $710,761.86, and for 1954 in the total sum of $797,094.71.

Later, plaintiff paid deficiencies in income tax and interest determined by the Commissioner of Internal Revenue for the years 1952, 1953 and 1954 as follows:

| Date paid | 1952 | Amount |
|---|---|---|
| May 12, 1954 | | $ 1,282.83 |
| | 1953 | |
| March 7, 1957 | | 63,302.60 |
| April 1, 1957 | | 8.83 |
| | 1954 | |
| March 7, 1957 | | 67,219.63 |
| April 1, 1957 | | 9.87 |
| November 17, 1958 | | 5,800.83 |

Thereafter, plaintiff filed timely claims for refund of tax payments for these three years. The claims were in large part disallowed, and the petition herein was filed on October 14, 1960.

Plaintiff asserts that it is entitled to a bad debt deduction for the year 1953 in the amount of the uncollected balance of the Des Moines Bank judgment under § 23(k) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(k) (1952 ed.) Plaintiff did not deduct such uncollected balance of the judgment in computing its taxable income in its 1953 income tax return, and claims that it thereby overpaid its income tax for 1953 by $735,323.10. Plaintiff further claims that the allowance of the bad debt deduction in 1953 would result in a net operating loss, which, under the provisions of § 122 of the Internal Revenue Code of 1939, 26 U.S.C. § 122 (1952 ed.) becomes a carryback deduction resulting in an overpayment of income tax for the year 1952 in the amount of $155,602.12.

Defendant takes the position that although the uncollected balance of the Iowa Court judgment may constitute a deductible "loss," it is not a deductible "debt" under the Code. The parties agree that the statutory provisions relating to losses and bad debts are mutually exclusive, and an amount deductible under one section or subsection is not deductible under the other.

Accordingly, the first determination required is whether or not the uncollected balance of the Iowa Court's judgment is

---

* Apparently through an inadvertent transposition error, the amount of the judgment as directed by the Supreme Court was actually $100 less than this figure.

a deductible "debt" under the Code, and if so, when it became deductible. If it is not a deductible "debt," plaintiff cannot now recover, nor does it assert any right to recover on the basis that it is a deductible "loss," under the relevant tax statutes.

Section 23(k) of the 1939 Internal Revenue Code relating to deduction of "Bad Debts" from income as embodied in the 1954 Code, 26 U.S.C. § 166 (1958 ed.), provided as follows:

(a) *General rule.—*

(1) *Wholly worthless debts.—* There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

There is no special or restricted definition of a "debt" under this section, although a distinction is made thereunder in subsection (d) as to "Nonbusiness debts" relating to a taxpayer other than a corporation. A further distinction is made between "Wholly worthless debts" and "Partially worthless debts" in the same section by subsections a-(1) and (2). Rather than supplying any limited definition of the word "debt" itself, the statute expressly includes as deductible *"any debt"* which becomes worthless within a taxable year.

The Regulations of the Internal Revenue Commissioner pertaining to this statute provide: " * * * A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * *" Reg. § 1.166–1(c), 26 CFR 1.166–1(c). This is nothing more than a restatement of the basic essentials of a "debt" as defined by the courts generally. These provisions of the statute do not apply to a debt evidenced by a "security" as defined in Sec. 165(g) (2) (c) of the 1954 Code, 26 U.S.C. § 165(g) (2) (c) (1958 ed.) No security was involved in the judgment of the Iowa Court, or in the obligations upon which the judgment was entered. Whatever these obligations were, they were personal obligations of defendants in that case,—obligations

that arose from their fraudulent sale of the ten utility companies to plaintiff.

The trial commissioner of this court has ably summarized the conclusions of the Iowa Supreme Court as follows:

The reproduction of this extensive opinion requires 93 pages of Volume 243 of the Iowa Reports. From a monumental trial record, reviewed on appeal *de novo,* Justice Bliss of the Supreme Court of Iowa has sifted out the sordid details of the nearly incredible financial machinations whereby plaintiff's corporate assets were systematically and fraudulently plundered by one George M. Bechtel and his subservient associates.

We shall not follow the long and tangled skein of these "nearly incredible financial machinations" any further than required to resolve the particular issues in this case.

■ The Iowa Court's judgment against the Bechtels *et al.* determined a "valid and enforceable obligation" of defendants therein "to pay a fixed or determinable sum of money" to plaintiff within the meaning of Treasury Regulations 1.166–1(c), supra. However, the judgment *per se* does not determine whether there is a "debt" within the meaning of the Internal Revenue laws and regulations. As the Court of Appeals for the Fifth Circuit said in Cotnam v. Commissioner of Internal Revenue, 263 F.2d 119, 122, 70 A.L.R.2d 1035 (5th Cir. 1959), citing United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500 (1936), "The nature of the transaction underlying the judgment, not the judgment itself, controls the tax effects. * . * *"

■ Defendant contends that there was no intent of the Bechtels *et al.* to repay the money, and therefore there could be no debt to plaintiff. However, a voluntary debt arising out of the intent of the parties is not the only kind of debt recognizable for tax deduction purposes. A debt can arise by operation of law without proof of specific intent to create

a debtor-creditor relationship. In Birdsboro Steel Foundry & Machine Co. v. United States, 78 Ct.Cl. 100, 108, 3 F. Supp. 640, 644 (1933) this court said:

> * * * The relationship of debtor and creditor arises where one person, *by contract or law,* is liable or bound to pay another an amount of money, certain or uncertain, * * *." [Emphasis supplied.]

In that case, plaintiff was unable to collect for equipment furnished as a subcontractor to a Government supplier. Although the contract made no provision for payment to plaintiff therein under the particular circumstances, the court stated (on the same page) " * * * the law would imply a stipulation for payment on demand or within a reasonable time." [1]

Defendant contends that the judgment is based upon an act of embezzlement and that "the embezzlement of funds does not create a debt owing by the embezzler to the defrauded party and the loss suffered in connection therewith is a loss and not a bad debt," citing Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330, 77 L.Ed. 670 (1933). In Piedmont Grocery v. United States, 66 Ct.Cl. 468, 473 (1928), cert. denied 280 U.S. 554, 15 S.Ct. 15, 74 L.Ed. 610 (1929), this court pointed out the distinction between a deductible loss sustained by an embezzlement and a loss sustained through a bad debt.

■ It would seem that as a general rule, embezzlement losses may not be deducted as worthless debts, even when reduced to judgment.

Although the judgment of the Iowa Supreme Court was for damages for fraud and deceit by the Bechtels *et al.,* the court did not find that they had embezzled the amount of $2,211,649.68 for which the judgment was entered. Embezzlement is a statutory offense, not an offense at common law, and civil liability usually lies in action for conversion, the gist of which is the wrongful deprivation or taking of property from the possession of another by fraud or other unlawful means. While a civil cause of action for embezzlement includes several of the factors of fraud included in the cause of action in the Des Moines Bank case, that cause of action was not for embezzlement of plaintiff's funds. The Iowa Supreme Court there characterized the fraudulent conduct of the Bechtels *et al.* as follows:

> As appears from the testimony of H. R. Bechtel, supra, he and his father, and Lee Bulmahn, Payne and Nyemaster were all officers or directors of ISU (Iowa Southern Utilities), and as such, and as "negotiators", as he expresses it, they were engaged in acquiring properties for ISU. * * * That company was entitled to any net profit made by Bechtels in each instance because of the *fiduciary relationship* between these "negotiators" and ISU. * * * [Emphasis supplied.] (51 N.W.2d, 174, 199.)

■ This particular fiduciary relationship under the facts in the Des Moines Bank case distinguishes this case from a case for embezzlement, larceny or theft. The amount of the judgment of $2,211,649.68, as determined by the court, was part of the total purchase price paid by plaintiff for the ten utilities. Although this part of the total purchase price was fraudulently retained by the Bechtels *et al.,* it was not embezzled or stolen by the Bechtels from the possession of plaintiff. It was the breach of the particular fiduciary duty and obligation of defendants which gave rise to plaintiff's recovery for the profits fraud-

1. See also Hamlen v. Welch, 116 F.2d 413 (1st Cir. 1940); Shiman v. Commissioner of Internal Revenue, 60 F.2d 65 (2d Cir. 1932); Douglas County Light & Water Co. v. Commissioner of Internal Revenue, 43 F.2d 904 (9th Cir. 1930); Martin v. Commissioner of Internal Revenue, 38 T. C. 188 (1962); Stamos v. Commissioner of Internal Revenue, 2 T.C. 885 (1954); Aftergood v. Commissioner of Internal Revenue, 22 T.C. 60 (1953); Sherman v. Commissioner of Internal Revenue, 18 T. C. 746 (1952); Trimble v. Commissioner of Internal Revenue, 6 T.C. 1231 (1946).

ulently retained by the Bechtels, and this breach was not an act of embezzlement.

The Iowa Court did not find that the Bechtels et al., as defendants, were obligated to pay the profits which they fraudulently retained because they had embezzled or stolen the money. The court said that the company " * * * was entitled to any net profit made by the Bechtels in each instance because of the *fiduciary relationship between* these 'negotiators' and * * * the Iowa Southern Utilities Company." [Emphasis supplied.] (51 N.W.2d at 199.)

■ This statement by the Iowa Court is in accord with the generally recognized principle of law that officers and directors of a corporation occupy a special fiduciary relationship to the corporation, similar to a trustee, and they are obligated thereby to repay to the corporation any profits derived by them in violation of their fiduciary duty to the corporation. Caffee v. Berkley, 141 Iowa 344, 118 N.W. 267 (1908); Clapp v. Wallace, 221 Iowa 672, 266 N.W. 493 (1936); 13 Am.Jur. 997, et seq., 3 Fletcher Private Corporations, ¶¶884–890 et seq.

■ As determined by the Iowa Supreme Court, the obligation of defendants Bechtel et al. to repay the profits they derived from the sale of the ten utilities to plaintiff is not affected by the fact that the corporation retains the property. The corporation had the option either to void the transaction and return the property or to retain the property and hold defendant officers and directors to account for the profits. 3 Fletcher, supra, ¶¶884, 890, 899, 950; 2 Scott Trusts, § 170.12 (1939 ed.) An action against an officer or director to recover such profits sounds in contract and is analogous to an action in assumpsit for money had and received. 3 Fletcher, supra, ¶¶1270, 1276, 1283, 1292, 1295; Cunningham v. Commissioner of Banks, 249 Mass. 401, 144 N.E. 447 (1924).

Accordingly, when plaintiff's officers and directors breached their fiduciary duty by their fraudulent sale of the ten utilities to the corporation, the law imposed upon them a clear and unqualified obligation to repay their fraudulent profits and at the same time plaintiff derived a clear and unqualified right to recover such profits. General Mortgage & Loan Corp. v. Guarantee Mort. & Secur. Corp., 264 Mass. 253, 162 N.E. 319 (1928); Dixmoor Golf Club v. Evans, 325 Ill. 612, 156 N.E. 785 (1927); Cream City Mirror Plate Co. v. Donahue, 142 Wis. 651, 126 N.W. 44 (1910); Marcus v. Otis, 168 F.2d 649 (2d Cir. 1948).

In the opinion on the case last cited above, Judge Learned Hand stated at p. 654, "Plainly the defendants violated their duty as directors, when they converted the company's funds to buy their shares, *and, like any other fiduciaries,* they made themselves liable for all profits. That is so fundamental a doctrine as to fiduciaries of all sorts, that it is somewhat surprising to find it questioned." * * * [Emphasis supplied.]

This fiduciary obligation of the Bechtels et al., as corporate officers and directors to repay plaintiff for their fraudulent profits was inchoate and undetermined until this profit in the principal sum of $2,211,649.68 was determined by the Iowa Supreme Court in 1952.

■ To support its point that the judgment does not entitle plaintiff to a deduction for the uncollectible part thereof as a bad debt, defendant places much reliance upon the case of United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353 (1936). Plaintiff in that case recovered judgment for the amount of profits received by an infringer of its patent, which was settled for a different and smaller amount, and plaintiff claimed a deduction for a loss resulting from this difference. Two points of distinction between the cited cases and the present case illustrate the basic fallacy of defendant's argument. One, the claim for deduction in Safety Car Heating Co., supra, was for a loss and not for a bad debt. Two, since the judgment was for loss of income and not loss of capital, the court said at p. 98, 56

S.Ct. at p. 358, " * * * The case is not to be confused with one where the basis of the suit is an injury to capital, with the result that the recovery is never income, no matter when collected. * * " The court pointed out that the loss claimed as a result of the settlement did not involve a loss of income, *still less a loss of capital.* The deduction claimed in the present case is for a bad debt which became deductible as worthless when the final loss or damage from the bad debt was ascertained in 1953, as pointed out hereafter. Within the meaning of Treasury Regulations 1.166–1(c), supra, this debt arose " * * * from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * * " This debtor-creditor relationship arose, not by contract, but operation of law arising from the fiduciary obligation of the Bechtels *et al.,* as officers and distributors of the company, to pay to the company the fraudulent profits they had retained. Birdsboro Steel Foundry v. United States, supra.

Defendant submits that the unsatisfied portion of the 1952 Iowa Court judgment, amounting to $1,723,894.65, exclusive of interest, cannot be considered as of tax significance until the ten utility properties, purchased by plaintiff from the Bechtels through the fraud which is the basis for the judgment, have been sold and until that time, no loss to plaintiff can be determined.[2] The difficulty we encounter with defendant's position is that it persists throughout in the assumption that the unsatisfied portion of the judgment is not deductible as a bad debt under § 166 of the Internal Revenue Code, supra, and therefore it is a "loss" deductible only under § 165 of the Internal Revenue Code for 1954, 26 U.S.C. § 165 (1958 ed.) which provides: "There shall be allowed as a deduction *any loss sustained* * * *" whereas § 166 provides "There shall be allowed as a deduction any debt *which becomes worthless within the taxable year.*" [Emphasis supplied]

If the unsatisfied balance of the Iowa Supreme Court judgment was deductible only as a property "loss" under § 165 supra, such "loss" might not be "sustained" until the ten utility properties were sold. However, we have determined that the uncollectible balance of that judgment was a "bad debt" and under § 166 it becomes deductible when it "becomes worthless."

In order to ascertain *when* a debt "becomes worthless," there must be some definitive event, such as a closed or completed transaction, which establishes the point in time when the debt became worthless. Shiman v. Commissioner of Internal Revenue, 60 F.2d 65 (2d Cir. 1932). The issue in that case involved determination of whether a guarantor of a broker's account, when the principal became insolvent and the guarantor was required to pay, could then deduct the payment on the guarantee as a bad debt. The court said at p. 67:

* * * Some courts have indeed gone so far as to say that a mere unexpressed determination to abandon the debt is enough. Jones v. Commissioner [of Internal Revenue], 38 F.2d 550 (C.C.A. 7); Stephenson v. Commissioner [of Internal Revenue], 43 F.2d 348 (C.C.A. 3). Possibly that would not suffice (article 151, Regulations 65), but here it seems to us that Shiman's examination of Oppenheim with the view of learning

2. The ten properties acquired by the plaintiff from the Bechtel partnership have been retained by it throughout the period involved in the present suit with the following exceptions: the street railway system portions only of the Ottumwa Traction Company and Burlington Railway & Light Company public utility properties were abandoned by the plaintiff during 1929 and 1930; the Lamoni Electric Company properties were disposed of in the year 1940; the securities of the Albia Light & Railway Company were sold in the years 1935 and 1941; the gas operating properties of the Peoples Light & Fuel Company of Grinnell were abandoned in 1954 on account of a change-over from manufactured gas to natural gas in the Grinnell area.

whether he could collect, his failure to discover any assets and his abandonment in fact of any effort, must be taken as determining the loss "by a closed and completed transaction," in the language of article 151.

In Helvering v. Smith, 132 F.2d 965 (4th Cir. 1942), the court discussed whether payments of assessments by plaintiff on bank stock were deductible as bad debts or losses, at p. 967:

> While it may be said, strictly speaking, that a deduction for a bad debt is allowable under the statute when its worthlessness is "ascertained", while a deduction for a loss is allowable only when it is actually "sustained", a loss of either sort must be shown or proved by some "identifiable event", or by attending circumstances which support an ascertainment of worthlessness. * *

 In the above cited case, the court said at p. 968:

> * * * courts have held that neither the whole nor a part of a debt may be charged off as worthless until the taxpayer is able to demonstrate with a reasonable degree of certainty the amount that is uncollectible. Johnson, Drake & Piper, Inc., v. Helvering, 8 Cir., 69 F.2d 151; Bingham v. Commissioner [of Internal Revenue], 2 Cir., 105 F.2d 971; Hadley Falls Trust Co. v. United States, 1 Cir. 110 F.2d 887. Likewise, the courts have uniformly held that losses by individuals may not be deducted unless they grow out of closed and completed transactions in which all reasonable possibility of gain has been exhausted. Mahler v. Commissioner [of Internal Revenue], 2 Cir., 119 F.2d 869; Deeds v. Commissioner, 6 Cir., 47 F.2d 695; Burdan v. Commissioner [of Internal Revenue], 3 Cir., 106 F.2d 207; Jones v. Commissioner, [of Internal Revenue], 9 Cir., 103 F.2d 681.

Obviously, the debt did not become worthless prior to the entry of judgment in 1952. Up to that time the Bechtel debtors contested the existence of any obligation to repay to plaintiff their fraudulent profits.

In 1953, plaintiff and its attorneys in the derivative litigation, decided not to proceed any further with two companion cases brought by it against W. L. Langley & Co. This company had been involved in the fraudulent Bechtel transactions. The first case in Illinois was dismissed for lack of jurisdiction; the second case in New York was dismissed for want of prosecution because of the large cost of litigation and risks involved to plaintiff.

On November 21, 1952, Harold R. Bechtel filed an application in the District Court of Appanoose County, Iowa, offering to settle the judgment against him for $100,000. The application was resisted on the grounds that it was inadequate and that a release of Harold R. Bechtel would also release the estates of J. Ross Lee and George M. Bechtel. At a hearing held on December 15, 1952, the trial court postponed its decision and suggested that the parties negotiate further taking into account the collectibility of the judgment.

Thereafter, at a meeting of plaintiff's board of directors held on December 22, 1952, the attorneys for plaintiffs in the derivative action, presented the evidence which their investigations had disclosed as to the assets of Harold R. Bechtel and the estate of George M. Bechtel, and expressed their opinion as to the extent to which they believed the judgment could be collected. They recommended the acceptance of a revised offer of $200,000 which had been received from Harold R. Bechtel and the estate of George M. Bechtel, provided that the acceptance did not result in the release of the estate of J. Ross Lee or any other joint tortfeasor. At that meeting, plaintiff's board of directors approved the offer, and authorized the attorneys to enter into a stipulation accepting it, but without releasing the estate of J. Ross Lee. This was a *bona fide* determination by plaintiff that no further sums were collectible from

Harold R. Bechtel or the estate of George M. Bechtel.

On December 27, 1952, the court entered an order approving the offer received from Harold R. Bechtel and the estate of George M. Bechtel in the amount of $200,000, subject, however, to plaintiff's seeking to recover all possible assets from the estate of J. Ross Lee.

After the Bechtel stipulation was entered into, the attorneys for plaintiffs in the derivative action continued their investigation to determine the extent to which the judgment could be collected from the estate of J. Ross Lee. These efforts resulted on April 16, 1953, in a stipulation with the estate relating to the settlement of the judgment against it, which stipulation was approved by the District Court on April 23, 1953. Upon the recommendation of the company's general counsel, plaintiff's board of directors at its annual meeting held April 26, 1953, unanimously approved and confirmed his prior action in entering into the stipulation on behalf of plaintiff. This was a *bona fide* determination by plaintiff that no further sums were collectible from the estate of J. Ross Lee.

Pursuant to the stipulations, as approved by the Iowa District Court, the following amounts were paid into the District Court for Appanoose County, Iowa on the judgment rendered against Harold R. Bechtel and the estates of George M. Bechtel and J. Ross Lee:

| Date | Amount | Payor |
|---|---|---|
| December 29, 1952 | $127,000.00 | Harold R. Bechtel and Estate of George M. Bechtel. |
| January 22, 1953 | 65,000.00 | Harold R. Bechtel and Estate of George M. Bechtel. |
| April 28, 1953 | 200,000.00 | Estate of J. Ross Lee |
| December 30, 1953 | 42,710.93 | Estate of J. Ross Lee |
| October 12, 1954 | 50,820.68 | Estate of J. Ross Lee |
| October 15, 1954 | 8,000.00 | Harold R. Bechtel and Estate of George M. Bechtel. |

The Clerk of the Court deducted $5,876.58 from the $200,000 paid by Harold R. Bechtel and the estate of George M. Bechtel for the payment of court costs.

The following amounts were received by plaintiff from the court on the dates shown:

| Date | Amount | Source |
|---|---|---|
| January 23, 1953 | $186,123.42 | Harold R. Bechtel and Estate of George M. Bechtel. |
| April 30, 1953 | 200,000.00 | Estate of J. Ross Lee |
| January 8, 1954 | 42,710.93 | Estate of J. Ross Lee |
| October 18, 1954 | 50,820.63 | Estate of J. Ross Lee |
| October 18, 1954 | 8,000.00 | Harold R. Bechtel and Estate of |
| Total received | $487,655.03 | George M. Bechtel. |

The balance of the judgment in the amount of $1,723,894.65, exclusive of interest has never been collected. No part of the $2,211,649.68 judgment, or interest thereon, rendered in favor of plaintiff and against Harold R. Bechtel and the

estates of George M. Bechtel and J. Ross Lee, was reported as income or otherwise included in the taxable income of plaintiff. The last stipulation for settlement of the judgment was between plaintiff and the J. Ross Lee Estate, and it was approved by the Iowa District Court on April 26, 1953.

The trial commissioner has found that, "until this decision was made in 1953, and until the stipulation was entered into with the Lee Estate in April, 1953, no one could say with reasonable certainty how much of the Des Moines Bank judgment would remain uncollectible." Although two payments totaling $58,820.08 were not actually received by plaintiff until 1954, these later payments did not add to the amount of the total payment of $493,531.61, required under the 1953 stipulations and settlement.

In Gorman Lumber Sales Co., 12 T.C. 1184 (1949) the petitioner filed a valid claim for debt of $32,920.07 against an estate. When it became evident in 1942 that the estate had insufficient assets to pay claims having priority over the petitioner's claim, he accepted $1,000 in full settlement of the debt and deducted the balance of his claim as a bad debt for the taxable year 1942. The Tax Court held that the debt became worthless in 1942 and constituted an allowable deduction for that year.

We conclude that the debt became worthless in 1953 as to the unpaid balance of the Iowa Court's judgment in the amount of $1,723,894.65 (exclusive of interest). No part of this balance of the judgment has ever been collected. The worthlessness of the debt was ascertained in 1953 by the identifiable events and circumstances attendant upon the final settlement of the Iowa Court's judgment and the dismissal of the Langley litigation in the Illinois and New York courts, as already reviewed herein and stated in the findings of fact. Accordingly, it became deductible as a bad debt in 1953 under the express provisions of § 23(k) of the 1939 Code.

At the time of the purchase of the ten utility companies by plaintiff from 1923 to 1926, plaintiff acquired two separate and distinct assets; one, the utility properties, and second, the obligation in debt arising by operation of law from the fiduciary obligation of the officers and directors to repay the wrongful profits derived by them on the fraudulent transactions. The utilities and the debt were separate property rights and each had a separate tax basis. For the purpose of determining depreciation, gain or loss, or other tax consequences, an allocation of the cost of the property is necessary. United States v. Rogers, 120 F.2d 244 (9th Cir. 1941).

There was an allocation in fact made on plaintiff's records as to the tax basis of the ten utility properties by the Commissioner of Internal Revenue in 1933. At that time he reduced the depreciable cost basis of these ten companies by transferring $2,585,616.13 to the non-depreciable intangibles account, pursuant to his determination of the fair value of these properties as depreciable assets. This was approximately ten years before the Des Moines Bank case was started in the Iowa State Court.

Plaintiff and defendant have stipulated, (1) that the amount of the original purchase price of the utility properties involved in the Des Moines Bank case which remained in plaintiff's intangibles account in the years in issue in this suit was $2,872,079.86, and (2) that the amount of plaintiff's intangibles account has never been less than that amount at any time after the transfers in 1933 pursuant to the Commissioner's required reduction in its depreciable basis account. Thus, the obligation of plaintiff's officers and directors subsequently determined to exist by the judgment of the Iowa Supreme Court in the Des Moines Bank case to repay the wrongful profits, $2,211,649.68, was substantially the same amount which had previously been the subject of transfer to plaintiff's intangibles account.

The parties have also stipulated that no income tax benefits have ever been allowed to plaintiff with respect to these

1933 reductions in the depreciable basis of these ten utility companies.

We conclude that the debt of defendants in the Des Moines Bank case to plaintiff arose at the time of their fraudulent breach of their fiduciary obligation, and that this debt had a cost basis to plaintiff in the amount of the judgment subsequently determined by the Iowa Supreme Court. This amount was subsequently reduced by settlement to an uncollected balance of $1,723,894.65, exclusive of interest, and this balance became worthless as a bad debt within the year 1953. Accordingly, we conclude that plaintiff was entitled to deduct such uncollected balance as a bad debt deduction in its 1953 income tax return. Plaintiff is entitled to recover and judgment will be entered to that effect.

The parties have agreed that the computation of the tax and interest thereon attributable to the bad debt deduction and the amount of offsets, if any, shall be reserved for further proceedings, pursuant to Rule 47(c). Accordingly, the case is remanded to the trial commissioner for such further proceedings.